1998 OK 10

**Debbie D. NELSON, Plaintiff/Appellee,**

v.

**Richard E. NELSON,
Defendant/Appellant.**

No. 88764.

Supreme Court of Oklahoma.

Feb. 3, 1998.

---

James H. Hadley, II, Pamela Pitcher–Hartley, Vinita, for Plaintiff/Appellee.

Bill R. Scarth, B. Ruth Kupcha, Claremore, for Defendant/Appellant.

Sam P. Daniel, Ronald W. Little, Tulsa, for Amicus Curiae.

¶ 1 KAUGER, Chief Justice:

¶ 2 Two issues are presented: 1) whether Administrative Order CV–95–1 [1] and 43 O.S. Supp.1997 § 107.2 [2] which require divorcing

1. Administrative Order CV–95–1, adopted by the District Court for the 11th Judicial District, on May 12, 1995, provides in pertinent part:
 "... Section 1. This rule applies to all parties in all divorce, separate maintenance, guardianship, paternity, custody or visitation actions; or any modifications or enforcement of a prior court order in these actions, excluding domestic violence actions, filed on or after June 1, 1995, where the interests of children under 18 years of age are involved. The rule may be applied to all cases pending as of June 1, 1995 at the judge's discretion.
 Section 2. All parties to such action shall successfully complete the seminar entitled 'Helping Children Cope with Divorce'....
 Section 5. Upon a party's failure to successfully complete the seminar pursuant to this rule, the judge assigned to the case may take appropriate action, including but not limited to the following:
 a. The Court may decline to hear the petition, application, motion or other request for relief of the party who fails to attend;
 b. The Court may consider a party's failure to attend as a factor in determining the best interest of the child; and
 c. The Court may hold the party who fails to attend in contempt...."

2. Title 43 O.S. Supp.1997 § 107.2 provides:
 "A. In all actions for divorce, separate maintenance, guardianship, paternity, custody or visitation, including modifications or enforcements of a prior court order, where the interest of a child under eighteen (18) years of age is involved, the court may require all adult parties to attend an educational program concerning, as appropriate, the impact of separate parenting and coparenting on children, the implications for visitation and conflict management, development of children, separate financial responsibility for children and such other instruction as deemed necessary by the court. The program shall be educational in nature and not designed for individual therapy.
 B. Each judicial district may adopt its own local rules governing the program."

parents with children to attend classes intended to help minors to cope with divorce are constitutional; and 2) whether, under the facts presented, the husband was entitled to have his timely-filed motion to vacate sustained. We find the administrative order and the statute do not violate constitutional standards of equal protection or due process nor do they constitute a prohibited delegation of the legislative authority. However, the cause must be reversed in part, because the father did not have notice that his rights to visitation were in jeopardy. Under the facts presented, the trial court abused its discretion by refusing to vacate the default judgment. The cause is remanded and the trial court is ordered to consider the father's application for visitation.

## FACTS

¶ 3 On July 19, 1996, the plaintiff/appellee, Debbie D. Nelson (wife/mother), served the defendant/appellant, Richard E. Nelson (husband/father), with a petition for divorce. In the petition, the wife sought: custody of the couple's two minor children **with the husband to have "reasonable visitation";** an award of child support and child care expenses computed in accordance with the Oklahoma Child Support Guidelines, 43 O.S. Supp.1995 § 118, *et seq.;* medical insurance and payment of a portion of any unpaid medical expenses of the children; an equitable division of marital property and debt; and attorney fees and costs. Because the husband believed that he and his wife were in the process of settling the issues presented in the divorce proceeding, he did not hire an attorney or file an answer.

¶ 4 Finding the husband in default, the trial court granted the divorce on November 4, 1996. Under the decree, the wife was given custody of the minor children, and the husband was denied visitation based on his failure to attend the course, "Helping Children Cope with Divorce." [3] The husband was ordered to pay $611.16 monthly for child support and sixty-six percent of any child care expenses. He was also required to provide medical insurance for the children and to pay a portion of any uncovered medical expenses. The decree divided marital property between the parties and awarded the wife $5,000.00 in lieu of alimony as property division. Each party was directed to discharge the debt on vehicles awarded as their separate property. Finally, the husband was ordered to pay the wife's attorney fee of $550.00. It is undisputed that the only pleading served on the husband was the petition. In that filing, there was nothing to put the husband on notice that he could be denied visitation with his children.

¶ 5 On November 27, 1996, the husband filed a motion to vacate the judgment and decree of divorce. [4] He asserted that: he did not file an answer because he believed that the property and child support issues would be settled; the child support awarded exceeded provisions of the Oklahoma Child Support Guidelines, 43 O.S. Supp.1995 § 118, *et seq.;* the division of property and debt was inequitable; and the decision to deny visitation based on his failure to attend the parenting seminar violated his right of association with his children and was not based on a consideration of the children's best interests.

¶ 6 A hearing on the motion to vacate was held on December 30, 1996, in which the husband requested that the decree be set aside as to all matters except for the portion of the judgment granting the parties' divorce. At the hearing, the husband acknowledged that he knew that he was required to attend the Children Coping With Divorce Seminar and that, after the decree was entered, he

---

Even though § 107.2 was enacted subsequent to the rulings of the district court, the husband, the wife and *amicus curiae* request that the Court consider its constitutionality.

3. Paragraph 6 of the decree provides:
 "6. That the plaintiff is a fit and proper person to be and is granted primary custody of said minor children. Defendant having failed to attend the course, ('Helping Children Cope with Divorce'), visitation is denied and upon completion of the course and application for visitation, the visitation rights of the non-custo-

dial parent will be considered and if appropriate afforded."

4. Title 12 O.S. Supp.1994 § 1031.1 provides in pertinent part:
 "... B. On motion of a party made not later than thirty (30) days after a judgment, decree or appealable order prepared in conformance with Section 696.3 of this title has been filed with the court clerk, the court may correct, open, modify or vacate the judgment, decree or appealable order...."

completed the course.[5] All attempts of the husband to offer evidence on the actual value of the marital estate were overruled. The trial court did accept evidence of the husband's income. Nevertheless, this information was not considered in adjusting the child support obligations. Instead, the wife was ordered to prepare an order *nunc pro tunc* removing child care expenses from the amount of child support originally ordered. On March 4, 1997, an order was entered designating the husband's child support obligation at $409.86 rather than $611.19 and requiring him to pay sixty-six percent of any employment-related child care expenses.

¶ 7 The husband appealed and he requested that the cause be retained to address the constitutionality of Administrative Order CV–95–1 and 43 O.S. Supp.1997 § 107.2. The motion was granted on April 25, 1997. Family and Children's Services, Inc. was given leave to file an *amicus* brief on May 29,1997,[6] and the husband's final response was filed on June 27, 1997.

**I**

¶ 8 **ADMINISTRATIVE RULE CV–95–1 AND 43 O.S. SUPP.1997 § 107.2 DO NOT DENY DIVORCING PARENTS WITH MINOR CHILDREN DUE PROCESS OR EQUAL PROTECTION NOR DO THEY CONSTITUTE A PROHIBITED DELEGATION OF THE LEGISLATIVE AUTHORITY.**

¶ 9 The husband argues that Administrative Order CV–95–1 and 43 O.S. Supp.1997 § 107.2, requiring the divorcing parents of a minor child to attend educational programs relating to the impact of divorce on a couple's children, are unconstitutional on equal protection and due process grounds. The wife and *amicus curiae* assert that neither the order nor § 107.2 violate constitutional standards.

¶ 10 The issue of the constitutionality of statutes similar to Administrative Order CV–95–1 and 43 O.S. Supp.1997 § 107.2 is one of first impression in Oklahoma and in the nation.[7] In other areas relating to divorce, state-enacted restrictions have been upheld, i.e., a one-year residency condition for maintaining an action for divorce,[8] and a waiting period between the time of filing and the entry of the final decree.[9] Additionally, there are established standards for the consideration of statutory enactments attacked on constitutional grounds.

**A. Equal protection.**

¶ 11 The equal protection clause of the fourteenth amendment requires that no state "deny to any person within its jurisdiction the equal protection of the laws."[10] Due process protections encompassed within the Okla. Const. Art. 2, § 7[11] are coextensive with those of its federal counterpart. The United States Constitution and the Oklahoma Constitution each contain built-in anti-discrimination components which afford protection against unreasonable or unreasoned classifications which serve no important governmental interests.[12] The same equal protection component found in the fourteenth amendment of the United States Constitution is present in the due process clause of art. 2, § 7.[13]

5. The transcript of proceedings, December 30, 1996, provides in pertinent part at p. 18:
 "... Q With regard to—were you made aware that you were to attend the Children Copying [sic] With Divorce seminar?
 A Yes.
 Q And have you now done that?
 A Yes...."

6. The single issue presented in the *amicus* brief concerns the constitutionality of 43 O.S. Supp. 1997 § 107.2, see note 2, supra, and Administrative Order CV–95–1, see note 1, supra.

7. Our research reveals no decisions in any jurisdiction on the issue and none are cited in the parties' briefs.

8. *Sosna v. Iowa*, 419 U.S. 393, 405, 95 S.Ct. 553, 560, 42 L.Ed.2d 532 (1975).

9. *People v. Connell*, 9 Ill.2d 390, 137 N.E.2d 849, 851, 62 A.L.R.2d 1255 (1956).

10. The United States Const., amend. XIV.

11. The Okla. Const. art. 2, § 7.

12. *DuLaney v. Oklahoma State Dept. of Health*, 1993 OK 113, 868 P.2d 676, 685; *Fair School Finance Council v. State*, 1987 OK 114, 746 P.2d 1135, 1148.

13. *Fair School Finance Council v. State*, see note 12, supra; *McKeever Drilling Co. v. Egbert*, 1935 OK ——, 170 Okla. 259, 40 P.2d 32, 35; *Callaway v. City of Edmond*, 1990 OK CR 25, 791 P.2d 104, 106.

¶ 12 There is a strong presumption which favors legislative enactments. A statute will be upheld unless it is clearly, palpably, and plainly inconsistent with fundamental law.[14] In testing the validity of a state statute which differentiates in treatment of one class paralleled with its treatment of another class, the statute is immune to an equal protection attack if the basis for the differentiation is neither arbitrary nor capricious, and it bears a reasonable relationship to a legitimate aim.[15] The Fourteenth Amendment does not require that equal protection be measured by exact equality of classification.[16] It does require that the classification rest on *bona fide*, not feigned differences, that the distinction have some relevance to the purpose for which the classification is made; and that the different treatments are not arbitrary.[17] Unless a classification jeopardizes the exercise of a fundamental right or it makes a classification on an inherently suspect characteristic, a classification which rationally furthers a legitimate state interest will withstand an equal protection challenge.[18]

¶ 13 Administrative Order CV–95–1 and § 107.2 make a single distinction—par-

ents, or persons standing in the parental role, who invoke the jurisdiction of the court in an action which will alter the character of the parental unit may be required to take an educational course intended to lessen the impact of the change on minor children—if minor children are not involved, the requirement does not apply. Recognizing the harmful impact of divorce on children and in attempt to minimize the involvement of minors in parental conflict,[19] statutes similar to the order and to § 107.2 have been enacted in a number of jurisdictions.[20]

¶ 14 States may seek to protect and facilitate the parental bond through parental participation,[21] and they have a strong, traditional interest in setting the terms of and procedures for marriage and divorce.[22] The courses mandated by the order and by § 107.2 are educational and cover topics specifically related to children who are members of families experiencing divorce or other disruption of the family unit. Neither the statute nor the administrative order provide that failure to attend the course will result in visitation or custody being denied.[23] Rather, to the extent that the requirement places a duty on divorcing parents with minor chil-

**14.** *Abrego v. Abrego,* 1991 OK 48, 812 P.2d 806, 810; *Turley v. Flag–Redfern Oil Co.,* 1989 OK 144, 782 P.2d 130, 173, *Black v. Ball Janitorial Serv., Inc.,* 1986 OK 75, 730 P.2d 510, 512; *Reherman v. Oklahoma Water Resources Bd.,* 1984 OK 12, 679 P.2d 1296, 1300; *Kimery v. Public Serv. Co.,* 1980 OK 187, 622 P.2d 1066.

**15.** *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); *Abrego v. Abrego,* see note 14, supra; *Turley v. Flag–Redfern Oil Co.,* see note 14, supra; *Kirk v. Board of County Comm'rs,* 1979 OK 80, 595 P.2d 1334, 1336–37.

**16.** *Norvell v. Illinois,* 373 U.S. 420, 423, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456, 459 (1963); *Abrego v. Abrego,* see note 14, supra; *Turley v. Flag–Redfern Oil Co.,* see note 14, supra.

**17.** *Walters v. City of St. Louis,* 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660, 665 (1954); *Special Indem. Fund v. Bedford,* 1993 OK 60, 852 P.2d 150, 155.

**18.** *McGowan v. State of Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961); *Association for Equitable Tax. v. City of Oklahoma City,* 1995 OK 62, 901 P.2d 800, 806. See also, *Madden v. Commonwealth of Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940).

**19.** L. Elrod, "A Review of the Year in Family Law," 28 Fam.L.Q. 541, 560 (1995); J. Kerr, "Effort Stalls in State Legislatures to Roll Back No–Fault Divorce Laws," 9–16–96 West.L.N. 9702 (1996); W. Fitzgerald, "Maturity, Difference, and Mystery: Children's Perspectives & The Law," 36 Az.L.R. 11, 109 (1994).

**20.** Mont.Code Ann. § 40–4–226 (1997); Colo. Rev.Stat. § 14–10–123.7 (1997); Del.Code Ann. Tit. 13 § 1507 (1996); Conn. Gen.Stat. Ann. § 46b–69b (1994); Fla. Stat. Ann. § 61.13(2) (1994); Iowa Code Ann. § 232.116 (1994); N.H.Rev.Stat. § 458–d (1993); Utah Code Ann. § 30–3–7 (1994).

**21.** *Hodgson v. Minnesota,* 497 U.S. 417, 484, 110 S.Ct. 2926, 2963, 111 L.Ed.2d 344 (1990). See also, *Ginsberg v. New York,* 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968).

**22.** *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 904, 106 S.Ct. 2317, 2322, 90 L.Ed.2d 899 (1986); *Sosna v. Iowa,* see note 8, supra; *Williams v. North Carolina,* 317 U.S. 287, 303, 63 S.Ct. 207, 143 A.L.R. 1273, 87 L.Ed. 279 (1942).

**23.** See Administrative Order CV–95–1, note 1, and 43 O.S. Supp.1997 § 107.2, note 2, supra.

dren which is not carried by persons without minor children, the distinction is justified by today's alarming divorce rates and the concurrent impact on our children. It reasonably relates to the government's legitimate concern that the best interests of minor children of divorcing families be served. We find that Administrative Order CV–95–1 and 43 O.S. Supp.1997 § 107.2 are not unconstitutional on equal protections grounds.[24]

## B. Due process.

■ ¶ 15 The husband's due process attack on CV–95–1 and on § 107.2 is procedural[25]—relating to his lack of notice—and substantive,[26] concerning the burden attending an educational course relating to the impact of divorce on minors bears on his parental rights. We agree that the husband did not receive notice sufficient to appraise him that his visitation rights might be in peril.[27] We also agree that a parent may not be penalized for failure to attend courses mandated either by the administrative order or by the statute absent notice that completion of the course is required. However, this Court will not assume that simply because here the husband did not receive adequate notice that parties generally will not be advised of the obligation to complete the educational courses.

■ ¶ 16 The husband's constitutional attack on CV–95–1 and § 107.2 on substantive grounds centers on an argument that, absent some jeopardy to the health or safety of children, the government may not intrude in the familial relationship and require parents to attend the mandated educational courses. However, in determining whether the order or the statute constitute a substantive due process violation, a balance must be struck between the right protected and the demands of society.[28] We recognize that the relationship of parents to their children is a fundamental, constitutionally protected right.[29] However, the liberty interest of the

24. Neither is the classification made between divorcing couples with children and those without in violation of the Okla. Const. art. 5, § 46 prohibiting the promulgation of special laws as the dissent asserts. A classification is not a prohibited, special law if it establishes a reasonable classification of persons, entities or things, sharing the same circumstances. *Bethany v. Public Employees Relations Bd.*, 1995 OK 99, 904 P.2d 604, 615; *State v. Goforth*, 1989 OK 37, 772 P.2d 911, 914; *Reynolds v. Porter*, 1988 OK 88, 760 P.2d 816, 822–23. In the separate concurring opinion in *Wagnon v. State Farm Fire & Casualty Co.*, 1997 OK 160, 951 P.2d 641, it was acknowledged that legislation relating to "discrete subclasses ... based upon identified distinguishing characteristics" would not be subject to art. 5, § 46's prohibition against a special law. We have determined in our equal protection analysis that to the extent that a distinction is made—between divorcing couples and between divorcing parents—the distinction is justified. There is no "invidious underinclusion". *Wagnon, supra.* The law has a general operation on all parents covered by the class—they must attend educational courses related to children who are members of families experiencing divorce or other disruption of the family unit. This Court has never adopted uniform rules for the district courts. Although the issue of whether the promulgation of rules by individual district courts has never been addressed in this context, we have indicated that rules adopted by individual district courts in conformance with a statute would be upheld. See, *State v. Whistler*, 1977 OK 61, 562 P.2d 860, 862.
 The dissent's assertion that the Administrative Order CV–95–1, see note 1, supra, and 43 O.S.

Supp.1997 § 107.2, see note 2, supra, encroach upon the independence of the judicial decision making process is also unconvincing. Although the trial judge must order the parties to attend the educational course, a party's failure to complete the seminar does not determine the outcome of the cause or the custody of the child. It does not change the trial judge's duty to consider the minor's best interests.

25. Procedural due process requires an inquiry into the constitutional adequacy of the State's procedural safeguards. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990); *Matter of Adoption of J.R.M.*, 1995 OK 79, 899 P.2d 1155, 1159.

26. The substantive component of the due process clause bars certain governmental action despite the adequacy of procedural protections provided. *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986); *Matter of Adoption of J.R.M.*, see note 24 at 1160, supra.

27. See discussion, pp. 1225–1227, infra.

28. *Youngberg v. Romeo*, 457 U.S. 307, 320, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982); *Matter of Adoption of J.R.M.*, see note 25 at 1160, supra.

29. *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511, 519 (1978); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639, 94 S.Ct. 791, 796, 39 L.Ed.2d 52, 60 (1974); *Matter of Guardianship of S.A.W.*, 1993 OK 95, 856 P.2d 286, 289; *Matter of Chad S.*, 1978 OK 94, 580 P.2d 983, 986.

parent must be balanced against the best interests of the child. In this arena, the child's interest are paramount [30] and the parents rights are a counterpart of the responsibilities they have assumed.[31] Unquestionably, the state has a constitutional right to declare and maintain a policy regarding marriage and divorce concerning persons domiciled within its borders.[32] The Legislature's enactment of § 107.2 and the district court's adoption of CV–95–1 is a recognition that children are impacted socially, emotionally and economically by divorce.[33] The extent to which a parent may be inconvenienced by attendance at the educational seminars is subordinate to the need to protect the child's welfare. In addition, the requirement to attend the class or seminar creates no burden on the parent's right of association with the child. We find that neither Administrative Order CV–95–1 nor 43 O.S. Supp.1997 § 107.2 are unconstitutional on procedural or substantive due process grounds.

## C. Delegation of legislative authority.

▇▇▇ ¶ 17 The husband's final attack on 43 O.S. Supp.1997 § 107.2 and on Administrative Order CV–95–1 centers on an argument that the statute and the rule provide for an unauthorized delegation of the legislative authority in violation of the Oklahoma Constitution art. IV, § 1 [34] and art. V, § 1 [35], because the courts are allowed to make rules to carry out the policy announced by the provision. However, this argument is unpersuasive. The language of § 107.2(a) provides standards for the kind of educational course which is mandated. Subsection (b) merely authorizes the courts to implement local rules governing the program the Legislature has required.[36]

¶ 18 Additionally, neither the statute nor the administrative order are result determinative. Unquestionably, the relationship of a parent to a child is a constitutionally protected right.[37] We agree that an administrative order may not take away or infringe on rights guaranteed by the constitution.[38] However, neither § 107.2 [39] nor CV–95–1 [40] require that visitation be denied for failure to attend the mandated seminar. Rather, it is clear that the standard for determining visitation rights remains the "best interest of the child." [41] Administrative Rule CV–95–1 specifically provides only that a party's failure to attend the parenting seminar may be considered as "a factor in determining the best interest of the child." The rule was not

**30.** *In re Bomgardner,* 1985 OK 59, 711 P.2d 92, 97; *Johnson v. Johnson,* 1984 OK 19, 681 P.2d 78, 79–80.

**31.** *Matter of Adoption of Baby Boy D,* 1985 OK 93, 742 P.2d 1059, 1065, *cert. denied,* 484 U.S. 1072, 108 S.Ct. 1042, 98 L.Ed.2d 1005 (1988).

**32.** *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890); *Umber v. Umber,* 1979 OK 24, 591 P.2d 299, 301; *Williams v. Williams,* 1975 OK 163, 543 P.2d 1401, 1403, *appeal dismissed,* 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 826 (1976).

**33.** Stake, "Mandatory Planning for Divorce," 45 Van.L.Rev. 397, 408 (1992).

**34.** The Okla. Const. art. IV, § 1 provides:
"The powers of the government of the State of Oklahoma shall be divided into three separate departments. The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

**35.** The Okla. Const. art. V, § 1 provides:

"The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature."

**36.** See, *City of Oklahoma City v. State,* 1995 OK 107, 918 P.2d 26, 29–30; *State v. Parham,* 1966 OK 9, 412 P.2d 142, 150–51.

**37.** *Quilloin v. Walcott,* see note 29, supra; *Cleveland Bd. of Educ. v. LaFleur,* see note 29, supra; *Matter of Guardianship of S.A.W.,* see note 29, supra; *Matter of Chad S.,* see note 29, supra.

**38.** *Cravens v. Corporation Comm'n,* 1980 OK 73, 613 P.2d 442, 444.

**39.** Title 43 O.S. Supp. 199 § 107.2, see note 2, supra.

**40.** Administrative Order CV–95–1, see note 1, supra.

**41.** Title 43 O.S.1991 § 111.1; 43 O.S. Supp.1997 § 112; *In re Bomgardner,* see note 30, supra.

followed here in making a decision on the husband's rights to visitation. In drafting local rules, judicial districts must keep in mind: 1) the purpose of the seminar—to educate the parties on the impact on children;[42] and 2) a visitation schedule that will serve the best interest of the minor child.[43] Trial courts remain vested with the discretionary authority to determine the child's best interest.[44]

## II.

¶ 19 **UNDER THE FACTS PRESENTED, THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO VACATE THE DEFAULT JUDGMENT.**

██ ¶ 20 The father asserts that although he was served with the petition, he was not aware that he could be denied visitation with his children or that a money judgment could be entered against him.[45] The wife argues that because the husband was properly served with the petition, he had notice of the proceedings and that he may not assert a lack of procedural due process. Although we disagree that the husband lacked notice his wife was seeking a property

division,[46] we agree that he was not advised that his visitation rights were in jeopardy.

██ ¶ 21 It is elementary and fundamental that "due process of law" encompasses more than a party's right to be heard. It begins with a party's right to notice of the pendency of an action and of *the nature of any relief sought.*[47] Here, it is undisputed that the husband was served with the petition and that it provided that he was to have "reasonable visitation" with his children.[48] Nevertheless, the default decree denied visitation.

██ ¶ 22 The mother argues that the husband had constructive notice that his visitation rights were at issue by virtue of the existence of Administrative Order CV–95–1 requiring him to attend the seminar, "Children Coping with Divorce." Although it appears that the husband was aware of the order and of the requirement that he attend the class,[49] nothing in the order advised him that failure to attend the course could result in a complete denial of visitation with his children. Rather, the clear language of the order indicates that failure to successfully complete the seminar may be considered as "a factor" in determining the best interest of the child.[50] There is nothing in the record

42. Title 43 O.S. Supp.1997 § 107.2, see note 2, supra.

43. Title 43 O.S.1991 § 111.1; 43 O.S. Supp.1997 § 112.

44. *Mathews v. Grant,* 1958 OK 150, 326 P.2d 1043, 1046.

45. The husband also raises other grounds for reversing the refusal to vacate the default judgment including a lack of evidence to support the judgment and the trial court's refusal to consider evidence of his income in setting child support. His assertion that he was without notice that he could be subjected to a money judgment is not persuasive. The husband was served with the petition providing for a division of the parties' property. The wife was awarded $5,000.00 property division in lieu of alimony.

46. The husband was served with the petition which provides in pertinent part:
"... 5. That during the marriage of the parties hereto, they have acquired certain real and personal property and indebtedness which should be fairly and equitably divided and distributed between the parties hereto...."

47. Notice is a jurisdictional requirement and a fundamental element of due process. Due pro-

cess requires adequate notice, a realistic opportunity to appear and the right to participate in a meaningful manner. The right to be heard is of little value unless a party is appraised of rights which may be affected by judicial process. Due process is violated by the mere act of exercising judicial power upon process not reasonably calculated to appraise interested parties of the pendency of an action. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–15, 70 S.Ct. 652, 656–57, 94 L.Ed. 865, 872–74 (1950); *Bailey v. Campbell,* 1991 OK 67, 862 P.2d 461, 469; *Cate v. Archon Oil Co.,* 1985 OK 15, 695 P.2d 1352, 1356; *Bomford v. Socony Mobil Oil Co.,* 1968 OK 43, 440 P.2d 713, 718. Lack of notice constitutes a jurisdictional infirmity. *Bailey v. Campbell,* see this note, supra; *Cate v. Archon Oil,* see this note, supra; *Pointer v. Hill,* 1975 OK 73, 536 P.2d 358, 361.

48. The petition provides in pertinent part:
"... 12. That in the best interest of the minor children of the parties, Plaintiff should be granted custody of the minor children, with reasonable visitation with the Defendant...."

49. See note, 5, supra.

50. Administrative Order CV–95–1, see note 1, supra.

indicating that based on the "best interest of the child" standard, the husband should have expected that his right to visitation would be barred. The husband's fitness as a parent was never questioned. Indeed, the mother admits that it was not a determinative factor in the decision to deny visitation.[51]

 ¶ 23 Because litigants are entitled to a fair day in court, policy encourages actions being tried on the merits. Default judgments are not favored.[52] Nevertheless, a decision to vacate rests in the sound legal discretion of the trial court and it will not be disturbed on appeal absent an abuse of discretion.[53] Decisions to vacate depend on the facts and circumstances of each individual case.[54] In determining whether there has been an abuse of discretion, we have held that to the extent a default judgment exceeds the relief requested in the petition, the judgment is void.[55] Here, nothing in the petition, in Administrative Order CV–95–1, or in the settlement negotiations with the wife,[56] put the husband on notice that his visitation rights were in jeopardy. We find that, under these facts, the trial court abused its discretion by failing to vacate the default judgment.

**51.** Appellee's Answer Brief, p. 10 provides in pertinent part:
"... Nelson's fitness as a parent was never at issue and was not a determinative factor in the decision to deny visitation to him. In the instant case, the trial court exercised its authority under the Administrative Order without so much of a degree of consideration as to Nelson's fitness (or unfitness) as a parent. Had the Court felt that Nelson was unfit, it certainly would not have given him the opportunity to come before the court and show his seminar attendance to regain visitation with the minor children...."
Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record. *Stork v. Stork*, 1995 OK 61, 898 P.2d 732, 737; *Reeves v. Agee*, 1989 OK 25, 769 P.2d 745, 753; *Womack v. City of Oklahoma City*, 1986 OK 14, 726 P.2d 1178, 1181.

**52.** *Singleton v. LePak*, 1967 OK 37, 425 P.2d 974, 977; *Morrell v. Morrell*, 1931 OK ——, 149 Okla. 187, 299 P. 866, 868.

**53.** *Farm Credit of Wichita v. Trent*, 1997 OK 70, ¶ 21, 943 P.2d 588 (1997); *Hassell v. Texaco, Inc.*, 1962 OK 136, 372 P.2d 233, 235.

**54.** *Farm Credit of Wichita v. Trent*, see note 53, supra; *American Bank of Commerce v. Chavis*, 1982 OK 66, 651 P.2d 1321, 1323; *Midkiff v.*

## CONCLUSION

 ¶ 24 Only in exceptional cases should a parent be denied the right to visit his or her minor child.[57] The standard used by the Legislature and by this Court as a test for granting or withholding visitation is the "best interest of the child."[58] However, neither Administrative Order CV–1–95 nor 43 O.S. Supp.1997 § 107.2 alter that standard or provide that failure to attend the mandated educational courses will result in visitation being denied. The classification established by the order and by the statute rest on a real and vital difference—parties seeking divorce who have minor children and those who do not. The different treatment is not arbitrary and it relates to the state's legitimate interest in protecting children of divorce. The difference in treatment does not violate due process or equal protection standards. Nevertheless, under the facts presented, the husband was denied due process of law when his visitation rights were abrogated without notice that access to his minor children was in jeopardy. Under these facts, the trial court abused its discretion by denying the husband's motion for relief.

*Luckey*, 1966 OK 79, 412 P.2d 175–76. See also, *Bailey v. Campbell*, see note 47, supra.

**55.** Title 12 O.S. Supp.1996 § 2004 provides in pertinent part:

"... B. 2. A judgment by default shall not be different in kind from or exceed in amount that prayed for in either the demand for judgment or in cases not sounding in contract in a notice which has been given the party against whom default judgment is sought. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings...."
*La Bellman v. Gleason & Sanders, Inc.*, 1966 OK 183, 418 P.2d 949, 953.

**56.** See note 3, supra.

**57.** *Harmon v. Harmon*, 1997 OK 91, ¶ 4, 943 P.2d 599; *In Re McMenamin*, 1957 OK 67, 310 P.2d 381; *Clark v. Clark*, 1936 OK ——, 177 Okla. 542, 61 P.2d 28.

**58.** Title 43 O.S. Supp.1997 § 112; *In Re Bomgardner*, see note 30, supra.

¶ 25 The cause is remanded and the divorce decree is reversed and remanded for further proceedings insofar as it denies the husband visitation.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

SUMMERS, V.C.J., and HODGES, LAVENDER, ALMA WILSON and WATT, JJ., concur.

OPALA, J., with whom SIMMS, J., joins, concurs in part and dissents in part.

HARGRAVE, J., dissents.

OPALA, Justice, with whom SIMMS, J., joins, dissenting in part.

¶ 1 Today the court gives its imprimatur to a *local court rule* (Administrative Order CV–95–1 [CV–95–1]),[1] which requires *all parties* in every domestic case (divorce, separate maintenance, guardianship, paternity, custody or visitation actions) to *complete a seminar entitled* "Helping Children Cope with Divorce." The rule authorizes the trial court to visit sanctions on noncomplying suit-

ors. By its pronouncement the court informs the public that the underpinnings for the rule's legitimacy are to be found in an *after-enacted statute,* 43 O.S.Supp.1997 § 107.2,[2] which authorizes each judicial district to adopt its own rules for managing a similar program. Because the rule is based on a reasonable classification—applying as it does to divorcing couples with children as distinguished from those who have none—the court declares that the rule does not fall within the prohibition of Art. 5, § 46, Okl. Const.,[3] which absolutely forbids regulation of procedure by special law.

¶ 2 This case is not about *special* law tainted by flawed classification. It is about *local* law that facially offends the § 46 prohibition against procedural rules which do not operate statewide. Unlike the court, I would *condemn* the judicial district's rule as (a) *local* adjective law impermissible under Art. 5, § 46, Okl. Const.,[4] (b) an encroachment upon the powers expressly reserved in the Supreme Court by Art. 7, § 6, Okl. Const.,[5] and (c) an invasion of an individual judge's decisionmaking independence. I would *pro-*

1. The pertinent terms of Administrative Order CV–95–1, adopted on May 12, 1995 by the District Court for the 11th Judicial District, are:
 "... Section 1. This rule applies to all parties in all divorce, separate maintenance, guardianship, paternity, custody or visitation actions; or any modifications or enforcement of a prior court order in these actions, excluding domestic violence actions, filed on or after June 1, 1995, where the interests of children under 18 years of age are involved. The rule may be applied to all cases pending as of June 1, 1995 at the judge's discretion.
 Section 2. *All parties to such action shall successfully complete the seminar entitled 'Helping Children Cope with Divorce'.* ...
 \*\*\*
 Section 5. Upon a party's failure to successfully complete the seminar pursuant to this rule, the judge assigned to the case may take appropriate action, including but not limited to the following:
 a. The court may decline to hear the petition, application, motion or other request for relief of the party who fails to attend;
 b. The Court may consider a party's failure to attend as a factor in determining the best interest of the child; and
 c. The Court may hold the party who fails to attend in contempt...." (Emphasis supplied.)

2. The provisions of 43 O.S.Supp.1997 § 107.2 (eff. Jan. 1, 1997) are:
 "A. In all actions for divorce, separate maintenance, guardianship, paternity, custody or visitation, including modifications or enforcements of a prior court order, where the inter-

est of a child under eighteen (18) years of age is involved, *the court may require all adult parties to attend an educational program concerning, as appropriate, the impact of separate parenting and coparenting on children, the implications for visitation and conflict management, development of children, separate financial responsibility for children and such other instruction as deemed necessary by the court.* The program shall be educational in nature and not designed for individual therapy.
 B. *Each judicial district may adopt its own local rules governing the program."* (Emphasis supplied.)

3. The pertinent terms of Art. 5, § 46, Okl. Const., are:
 "The Legislature shall not, except as otherwise provided in this Constitution, pass any *local or special law* authorizing:
 Regulating the practice or jurisdiction of ... in judicial proceedings or inquiry before the courts ... or other tribunals...." (Emphasis supplied.)

4. *See Reynolds v. Porter,* 1988 OK 88, 760 P.2d 816, 822; *Maule v. Independent School Dist. No. 9,* 1985 OK 110, 714 P.2d 198, 203–204.

5. The pertinent terms of Art. 7, § 6, Okl. Const., are:
 "... [G]eneral administrative authority over all courts in this State, including the temporary assignment of any judge to a court other

*nounce* all local rules, promulgated under the authority of § 107.2, to be *ineffective*. This is so because their content would offend against the § 46 uniformity-of-procedure mandate and usurp the constitutional power of this court to implement the command of § 46—on a statewide basis—by an exercise of its § 6 authority. Because today's pronouncement so gravely contravenes Oklahoma's fundamental law, I recede from the court's opinion. My sentence of nullity for the local rule in contest would not limit any judge's power to do, in individual litigation, what proof and discretion may require.

## I

## THE TRILOGY OF CONSTITUTIONAL PROVISIONS THAT AFFECT LEGISLATIVE POWER TO ENACT "SPECIAL" OR "LOCAL" LAW

¶ 3 Pertinent to an understanding of the rule's infirmity are three constitutional sections that deal with the taint of "special" or "local" law—Art. 5, §§ 32,[6] 46 [7] and 59.[8]

### Art. 5, § 59, Okl. Const.[9]

¶ 4 Art. 5, § 59 mandates the law's *uniform application by enactment of general*

than that for which he was selected, is hereby vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules...."

6. The terms of Art. 5, § 32, Okl. Const., are:
No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State.

7. For the pertinent text of Art. 5, § 46, Okl. Const., see *supra* note 3.

8. The terms of Art. 5, § 59, Okl. Const., are:
Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted.

9. For the pertinent text of Art. 5, § 59, Okl. Const., see *supra* note 8.

10. *Reynolds, supra* note 4 at 822; *State of Oklahoma ex rel. Nesbitt v. District Court of Mayes County*, 1967 OK 228, 440 P.2d 700, 703 syl. 1.

*laws.*[10] By § 59 a special law is permissible where a general law could not be made applicable. In assessing whether a statute is constitutionally permissible under § 59, a three-prong inquiry is to be made: (1) Is the statute a special or general law? (2) If the act is a special law, could a general law be made applicable? and (3) If a general law may not be made applicable, does the statute pass muster as a permissible special law? [11]

### Art. 5, § 46, Okl. Const.[12]

¶ 5 Art. 5, § 46 mandates in absolute terms *statewide procedural uniformity* for an entire class of similarly situated persons or things.[13] Its relevant terms *expressly prohibit* the legislature from regulating *judicial procedure* or inquiry before the courts by special or local law.[14] A countywide (or districtwide) rule of civil procedure is *per se* offensive to the notion of territorial (statewide) uniformity so absolutely imposed by § 46.

¶ 6 Although directed to the legislature, the terms of §§ 46 and 59 are equally binding on the courts.[15] **Our own jurispru-**

11. *Ross v. Peters*, 1993 OK 8, 846 P.2d 1107, 1119; *Reynolds, supra* note 4 at 822.

12. For the text of Art. 5, § 46, see *supra* note 3.

13. *Reynolds, supra* note 4 at 822.

14. *Maule, supra* note 4 at 203–204; *Reynolds, supra* note 4 at 822; *Great Plains Federal S & L Assn. v. Dabney*, 1993 OK 4, 846 P.2d 1088, 1095–1096 (Opala, J., concurring). "Fundamental fairness cannot be afforded except within a framework of orderly procedure." *Joiner v. Brown*, 1996 OK 112, 925 P.2d 888, 890, citing *Pryse Monument Company v. District Court of Kay County*, 1979 OK 71, 595 P.2d 435, 438. "'* * * It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law.'" *Joiner, supra* at 890 n. 4, quoting from *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring).

15. *Reynolds, supra* note 4 at 822.

dence, no less than the legislature's enactments, must faithfully conform to the fundamental law's prohibition against disuniform (or non-uniform) laws on prohibited subjects.[16]

### Art. 5, § 32, Okl. Const.[17]

¶ 7 The terms of Art. 5, § 32 provide a procedure to be followed in considering and passing local or special acts upon matters falling *outside* the prohibitory scope of the absolutely excluded § 46 subjects.[18] The enactment of special or local acts on subjects expressly prohibited by § 46 is not to be deemed validated by compliance with the publication requirements of § 32.[19]

### II

### CLASSIFICATION THAT MAY BE TERMED PERMISSIBLE UNDER ART. 5, §§ 59 AND 46, OKL. CONST.

¶ 8 Classification was developed to test for fundamental-law conformity legislative acts challenged as violative of § 59.[20] In *Reynolds v. Porter*[21] classification was introduced to measure the constitutional orthodoxy of statutory limitations—a subject protected from disuniformity by § 46. Limitations do not constitute a monolithic subject; they operate on multiple *classes of liti-*

*gation.* To test limitations by the gauge of § 46's *absolute prohibition* of disuniformity, *Porter* analyzed the enactment there under attack by the classification used in the common law for dividing different types of litigation into separate time-bar categories.[22]

¶ 9 Classification is still the test for legislative compliance with § 59 rather than for an act's orthodoxy when it is measured by the § 46 uniformity-of-procedure mandate. Outside of limitations, the test for § 46 conformity of a challenged act is the *presence or absence of uniformity.* That is the sole standard this dissent applies *to conclude that changing a rule of procedure for an entire class of litigation (recognized by our statutory law) and confining the operation of that change to less than the entire state makes the rule an impermissible "local law"* within the meaning of § 46's absolute bar against *territorial disuniformity* of Oklahoma's adjective law.

### III

### THE LOCAL–AND–SPECIAL–LAW DISTINCTION IN OKLAHOMA'S FUNDAMENTAL LAW

¶ 10 An impermissible *"special act"* is one that deals with a subject already covered

---

16. *Reynolds, supra* note 4 at 822.

17. For the text of Art. 5, § 32, see *supra* note 6.

18. While Art. 5, § 32 requires the legislature to publish notice (in a specified manner) before the intended introduction of a special or local act, it *does not authorize the enactment of such laws* upon subjects expressly prohibited by Art. 5, § 46. *Nesbitt, supra* note 10 at 705.

19. *Nesbitt, supra* note 10 at 705, citing *Chickasha Cotton Oil Co. v. Lamb & Tyner,* 28 Okl. 275, 114 P. 333, 336 (1911); *White v. Infield,* 122 Okl. 4, 250 P. 81, 82 (1926); *Wade v. Board of Com'rs of Harmon County,* 161 Okl. 245, 17 P.2d 690, 692 (1932); *Leach v. Board of Com'rs of Mayes County,* 173 Okl. 270, 47 P.2d 596 (1935); *Missouri–Kansas–Texas Railroad Company v. Coryell,* 1959 OK 175, 346 P.2d 935, 937.

20. "Classification is essentially the same in law as it is in other departments of knowledge or practice. It is the grouping of things because they agree with one another in certain particulars and differ from other things in those same particulars." *Anderson v. Walker,* 1958 OK 297,

333 P.2d 570, 574. As between the persons and places included within the operation of a law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination. *Id.* at 574 (quoting *Haas v. Holloman,* 1958 OK 174, 327 P.2d 655, 656); *Nesbitt, supra* note 10 at 704–705 (while certain subjects may be classified for legislative purposes, the classification adopted must be neither arbitrary nor capricious and must bear a rational relation to the object sought to be accomplished). It is arbitrary and capricious for the legislature to take a natural class of persons, split that class in two and then arbitrarily designate the dissevered faction of the original unit as two classes and enact different rules of law for the treatment of each. *Anderson, supra* at 574.

21. *Supra* note 4.

22. *See in this connection City of Claremore v. Oklahoma Tax Commission,* 197 Okl. 223, 169 P.2d 299, 301 syl. 4 (1946) (although upholding as constitutionally sound a three-year limitation period in a sales tax act, the court does not·

by general law and gives that subject a treatment different from that accorded by general law.[23] In contrast, an impermissible *"local law"* is one which has restrictive territorial application.[24] The inevitable consequence of territorial restraint is that the litigants within the operational range of the rule will be given treatment different from that which, under like circumstances, suitors will receive elsewhere.[25]

¶ 11 *None of the subjects prohibited by Art. 5, § 46 may be dealt with by local law.* Local law dealing with civil procedure (a subject included in the § 46 litany and protected against disuniformity) is *invalid per se.* The taint of *locality* does not stem from the vice of an *impermissible classification.*[26] It consists of addressing a subject set aside in § 46 for uniform statewide operation by a law (or rule) that is not to be the same in the entire state.

## IV

### TODAY'S ANOINTMENT OF LOCAL RULE CV–95–1 CREATES A CONSTITUTIONALLY IMPERMISSIBLE TERRITORIAL DISUNIFORMITY IN CIVIL PROCEDURE, WHICH OFFENDS THE FUNDAMENTAL–LAW MANDATE FOR LIKE STATEWIDE PROCEDURE IN THE COURTS

¶ 12 We are not dealing here with an impermissible *special* law but with *localization* of adjective law by making it operative in but a single two-county district.[27] Territorial disuniformity facially condemns the rule as a violation of the § 46 proscription against locally different procedure.[28]

¶ 13 No classification is implicated in today's testing of the rule in contest. This is so because procedure must have uniform impact (a) *in all judicial institutions* of the same cognizance when they are processing like classes of litigation and (b) *when they*

discuss the impact of Art. 5, § 46, Okl. Const., on the enactment).

**23.** *Reynolds, supra* note 4 at 822. Special or local laws are those which single out less than an entire class of similarly affected persons or things for different treatment. A special law is one that rests on a false or deficient classification. "It creates preference and establishes inequity." *Barrett v. Board of Com'rs of Tulsa County,* 185 Okl. 111, 90 P.2d 442, 446 (1939); *Maule, supra* note 4 at 203 n. 30; *Dabney, supra* note 14 at 1095–1096 (Opala, J., concurring).

**24.** In *Territory ex rel. Taylor v. School Dist. No. 83 of Oklahoma County,* 10 Okl. 556, 64 P. 241 syls. 1, 2 (1901), the court states:

"1. The word 'local,' as a word of constitutional or statutory prohibition, signifies belonging or confined to a particular place, and relates only to a portion of the people of a state or their property. When applied to legislation, it signifies such legislation as relates to only a portion of the territory or state, or a part of its people, or to a fraction of the property of its citizens.

2. The word 'special,' when used in a statute prohibiting special legislation, relates to and distinguishes one section from others of a general class."

**25.** *See, e.g., Nesbitt, supra* note 10 at 705–706. Noting that Art. 5, § 46 prohibits special or local laws prescribing the powers and duties of county officers, the court held that nothing in Oklahoma's fundamental law authorizes the legislature to impose upon an arbitrarily selected group of county officials duties which do not stand

imposed upon like officials in other counties of the state. *Id.*

**26.** Even a rational classification would not save a local or special act from the § 46 taint. That section *absolutely condemns* any disuniform law on a subject that is prohibited by its text. *Reynolds, supra* note 4 at 822–823. Court procedure is among the prohibited subjects. *See* the provisions of Art. 5, § 46, Okl. Const., *supra* note 3.

**27.** This localizing effect subjects the people in the two-county district to a different legal treatment from that which is accorded similarly- or like-situated persons in the rest of the state. *See Anderson, supra* note 20 at 573–574.

**28.** Territorial uniformity of procedure has had an interesting history in the federal system. The ABA movement for uniform federal procedural rules started with the proposition that the early congressional attempt by the enactment of the 1872 Conformity Act had failed, and that "lawyers had difficulty knowing what procedure would apply in any given federal district court." *See* Stephen N. Subrin, *Uniformity In Procedural Rules and the Attributes of a Sound Procedural System: The Case for Presumptive Limits,* 49 Ala L.Rev. 79, 80 (1997). Uniformity in the federal system is cast in three dimensions: (1) *interfederal district court uniformity* (national procedural uniformity across all federal courts); (2) *intrastate uniformity* (uniformity in both state and federal court within a state) and (3) *transsubstantive uniformity* (the same procedural rules for different types of cases, regardless of what substantive law is applied). *Id.* at 79–80.

*are impacting similarly-situated suitors.* The rule I would condemn today singles out litigants in the two-county district for a procedural treatment different from that accorded in like situations within the remainder of the state.[29]

¶ 14 In the final analysis, the 43 O.S.Supp.1997 § 107.2 grant of rulemaking power amounts in this case to an *unconstitutional delegation* to local courts (or to judicial districts) of a power whose exercise would offend the procedural-uniformity mandate of § 46.[30] The legislature may not delegate to another body the powers that are expressly reserved by Art. 7, § 6, Okl. Const., in the Supreme Court.[31] Today's approbation of the rule here on review and of the legislature's effort to invite adoption of local rules upon a subject that *must* have statewide uniformity, offends the constitutionally mandated single regime of proce-

dure. It destroys the very fabric our fundamental law inexorably commands.

## V

## THE RULE ENCROACHES UPON THE INDEPENDENCE OF THE JUDICIAL DECISIONMAKING PROCESS

¶ 15 The rule under scrutiny here also is offensive to the norm pronounced in *Yelloweyes By and Through Gold v. Blevins.*[32] *Blevins* holds that an individual judge's decisionmaking independence is protected from invasion effected by a court rule. There the court invalidated a local court rule that bound *all Oklahoma County district court judges* by a ruling (upon a novel point of law) earlier made by *one of them.* The mandatory character of the rule was condemned as an impermissible restriction on the independence of judicial decisionmaking process.

¶ 16 Because each trial court must decide independently whether the parties who stand before it should undergo the kind of training mandated by CV–95–1,[33] the rule plainly con-

**29.** *Reynolds, supra* note 4 at 823. The notion that procedural uniformity assures evenhanded treatment within the entire legal system finds expression in Oklahoma jurisprudence. In *Williams v. Johnson,* 1964 OK 188, 396 P.2d 518, the legislature enacted the District Court Conciliation Department Act, which created a conciliation department in the district court of counties having a population of more than 200,000 and less than 400,000. Because the act applied only to Tulsa County and there appeared to be no real and substantial distinction between Oklahoma and Tulsa Counties upon which varying treatment could be reasonably founded, the court held that the attempted classification of counties upon the basis of population offends the Art. 5, § 46, Okl. Const., uniformity-of-procedure mandate. In *Anderson, supra* note 20 at 573–574, the court (a) *upheld* the legislative act creating additional courts (juvenile court) in counties of more than 100,000 and less than 300,000 as general in application and complying with state fundamental law, but (b) *condemned* as arbitrary and capricious another part of the same act which provides for a different treatment (solely upon the basis of age) of male delinquents covered by the act from those in counties that are excluded from its operation. *See also Killion v. Walker,* 1959 OK CR 5, 334 P.2d 454, 457, adopting the rationale of *Anderson.*

**30.** In *Sterling Refining v. Walker,* 165 Okl. 45, 25 P.2d 312, 317–20 syl.4 (1933), the court holds that the legislature cannot impose on the Supreme Court the nonadjudicative duty of writing rules for the Corporation Commission. That power would change the functions of the court from adjudicative to executive. The court may neither make policy for an administrative agency

nor promulgate procedural rules for the conduct of its business. The separation-of-powers doctrine enjoined on this government by Art. 4 § 1, Okl. Const., interdicts legislative encroachment upon the functions assigned by the constitution to some other branch. *See Sterling, supra,* and *Earl v. Tulsa County Dist. Court,* 1980 OK 157, 606 P.2d 545, 547.

**31.** For the pertinent terms of Art. 7, § 6, Okl. Const., see *supra* note 5. *See also Workers' Compensation Court v. Merit Protection Commission,* 1993 OK 145, 863 P.2d 1226, 1227; *Chiles v. Children A, B, C, D, E and F,* 589 So.2d 260, 263–264 (Fla.1991). The rule-making power of the Supreme Court is conferred not only by Art. 7, § 6, which invests the court with general administrative control over all inferior courts. It is also recognized in 12 O.S.1991 § 74. The terms of § 74 are:

> The Justices of the Supreme Court shall meet every two (2) years during the month of June at the capitol of the state and revise their general rules, and make such amendments thereto as may be required to carry into effect the provisions of this Code, and shall make such further rules consistent therewith as they may deem proper. The rules so made shall apply to the Supreme Court, the county courts, the superior courts, the district courts and all other courts of record.

*Eberle v. Dyer Const. Co.,* 1979 OK 49, 598 P.2d 1189, 1192–1193.

**32.** 1985 OK 3, 696 P.2d 1026, 1027.

**33.** For the pertinent terms of CV–95–1, see *supra* note 1.

tradicts the teachings of *Yelloweyes.*

## VI

### THE COURT'S RESPONSE TO THIS DISSENT'S ANALYSIS RESTS ON A FACIAL LEGAL FALLACY

¶ 17 The court points to *Wagnon v. State Farm Fire & Cas Co.*[34] for authority to create discrete subclasses. *Wagnon* is inapposite. Under consideration there was a "special law," while here we deal solely with an impermissible "local law".[35]

¶ 18 The court relies on *State ex rel. Wise v. Whistler*[36] for the notion that the legislature is not forbidden from inviting district courts to adopt local rules that would govern procedure in judicial districts. *Whistler* is clearly distinguishable. There, the legislature authorized district judges to prescribe rules for the regulation of county jails within the judicial districts in which they sit. *Management of county jails is not a subject absolutely protected from territorial disuniformity by Art. 5, § 46.* Statute-based or judge-prescribed nonuniform civil procedure in the district courts is plainly, absolutely and unequivocally interdicted by the command of our fundamental law. In the face of § 46's uniformity-of-procedure mandate, the legislature is powerless to delegate to the district courts this court's rulemaking authority in matters of procedure.[37]

¶ 19 In response to the court's notion that the rule's mandatory character is harmless because it does not determine the outcome of the cause (or the custody of the child), suffice it to say that adverse legal consequences do attach to a party's failure to knuckle under the rule's *ukase.*[38]

¶ 20 Lastly, in answer to the opinion's comment that this court has not adopted uniform rules for the district courts, I would refer to the Rules for the District Courts of Oklahoma,[39] which in various versions have been in force for several decades.

### SUMMARY

¶ 21 I would condemn the rule under scrutiny here because it is "local" and affects a subject protected against territorial disuniformity. The rule is hence violative of Art. 5, § 46, Okl. Const. There can be *no local* tampering with a subject listed in § 46. *No subject enumerated in § 46 may be regulated by a law or rule that does not extend to the whole state.* Flawed classification is hence not the essence of infirmity to be found in the rule under review today.

¶ 22 Today's approval of the rule, as well as the pronouncement's support for the authority conferred on local courts by the provisions of 43 O.S.Supp.1997 § 107.2, will doubtless serve as a license for spawning a different procedural regime in each judicial district. Both the legislature and this court are powerless to authorize local judicial institutions to adopt disuniform rules on subjects which, by the § 46 mandate, are required to have statewide application. The rulemaking powers expressly reserved to the Supreme Court by Art. 7 § 6, Okl. Const., may not be delegated to any other judicial body.[40]

¶ 23 My condemnation of the rule would not preclude any nisi prius court from ordering a party's attendance of educational courses when its ruling is based on need shown and *found to be present* in a case *sub judice.*

---

34. 1997 OK 160, 951 P.2d 641.

35. For a discussion of the distinguishing characteristics of local and special law, see Part III *supra.*

36. 1977 OK 61, 562 P.2d 860.

37. *Chiles, supra* note 31 at 263–264.

38. For the pertinent terms of CV–95–1, see *supra* note 1.

39. 12 O.S.1991, Ch. 2, App.

40. *Chiles, supra* note 31 at 263–264