2005 OK 1

**Laura L. BARNES, now Hendrix, Appellant,**

v.

**Jason L. BARNES, Appellee.**

**No. 98,090.**

Supreme Court of Oklahoma.

Jan. 11, 2005.

Lauren LeBlanc Day, Oklahoma City, OK and Catherine H. Petersen, Norman, OK, for Appellant.

Randal Dean Morley, Tulsa, OK, for Appellee.

Barbara Ann Bartlett, Tulsa, OK, for Amicus Association of Parenting Coordinator of Tulsa County.

HARGRAVE, J.

¶ 1 Mother was given custody of the two-year-old child in April of 1999 in an agreed decree of divorce, and Father was given standard visitation with extended summer visitation. In June of 2000, Father asked the court to further expand his visitation to one-half of the summer and for right of first refusal to care for the child when the mother could not. Father also requested a modification of child support. Testimony at the hearing demonstrated that there had been a deterioration in communication between the parties since they had both been remarried and Father's visitation with the child had become more difficult for the Father to procure. The mental health expert who evaluated the family agreed and recommended the appointment of a parenting coordinator to assist the parents with communication, with their visitation problems, to help them negotiate agreements, and to advise them what was in the best interest of the child. Father stated that he would not object to the appointment of a parenting coordinator. Mother testified that she was willing to follow the recommendations in the psychologist's report, and that she had discussed with her counsel the functions of a parenting coordinator. She testified that she was willing to use a parenting coordinator.

¶ 2 An order modifying the divorce decree was entered and filed on July 9, 2002. The trial court found a substantial, material and permanent change of circumstances and made modifications in visitation and the amount of child support paid. The order modifying appointed a parenting coordinator which is the main basis of the present appeal. An Order Appointing Parenting Coordinator was also entered. In that order, the parenting coordinator was given specific issues

which outlined his decision-making power. These issues are as follows:

 5. Issues Subject to Parent Coordination:

 A. The following specific issues are hereby submitted to the Parenting Coordinator:

 (1) To assist the parties in communications,

 (2) To resolve minor issues,

 (3) To monitor problems, if any, and transitions, and,

 (4) To make recommendations regarding shared parenting time.

 B. The Parenting Coordinator may not make any decisions outside of the scope of the issues submitted above, unless both parties agree.

¶ 3 The trial court, after hearing the testimony of the parties and the psychologist, waived the parties' signature on the Order Appointing Parenting Coordinator. Mother now appeals the appointment of the parenting coordinator as she argues such appointment is unconstitutional.

## EQUAL PROTECTION

 ¶ 4 The equal protection clause of the fourteenth amendment requires that no State "deny to any person within its jurisdiction the equal protection of the laws." Due process protections encompassed within the Oklahoma Const. Art. 2, § 7 are coextensive with those of its federal counterpart. The United States Constitution and the Oklahoma Constitution each contain anti-discrimination measures that protect citizens from unreasonable classifications which have no important governmental interest. *Dulaney v. Oklahoma State Dept. of Health,* 1993 OK 113, 868 P.2d 676, 685.

 ¶ 5 There is a strong presumption which favors legislative enactments. A statute will be upheld unless it is clearly, palpably and plainly inconsistent with fundamental law. *Nelson v. Nelson,* 1998 OK 10, ¶ 12, 954 P.2d 1219, 1224. In testing the validity of a state statute which differentiates in treatment of one class paralleled with its treatment of another class, the statute is immune to an equal protection attack if the basis for the differentiation is neither arbitrary nor capricious, and it bears a reasonable relationship to a legitimate aim. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320; *Nelson v. Nelson,* 1998 OK 10, ¶ 12, 954 P.2d 1219, 1224; *Abrego v. Abrego,* 1991 OK 48, ¶ 8, 812 P.2d 806. The Fourteenth Amendment does not require that equal protection be measured by exact equality of classification. It does require that the classification rest on bona fide, not feigned differences; that the distinctions have some relevance to the purpose for which the classification is made; and that the different treatments are not arbitrary. *Nelson v. Nelson,* 1998 OK 10, ¶ 12, 954 P.2d 1219, 1224; *Abrego v. Abrego,* 1991 OK 48, ¶ 8, 812 P.2d 806.

¶ 6 Under this test, the first issue is who is the class and whether the classification is bona fide. Mother presents several U.S. Supreme Court cases, as well as local cases concerning grandparent rights. These are clearly not applicable here. When a divorce occurs, the non-custodial parent is not placed in the same position as the third parties to the family such as grandparents. The parental coordinator is not there to usurp the mother's rights to make decisions regarding her child, but is there to aid in the communication between the natural parents. The father in the instant case would be recognized under any scenario. as having rights over and above that of a grandparent.

¶ 7 Mother also relies upon case law involving termination of parental rights. It is clearly inapplicable as termination of parental rights is not the same as allowing a parenting coordinator to assist the court in decisions of communication and enforcement of court orders. There is no taking of a fundamental right. The powers delegated to the parenting coordinators of aiding in communication and enforcing orders are court powers. The court is directed to assure children frequent and continuing contact with both parents and to encourage the parents to share the rights and responsibilities of child rearing. 43 O.S.2001, § 112.

 ¶ 8 It is also important to note that the Parenting Coordination Act does not necessarily apply only to the class of divorced

parents. It applies in paternity and guardianship cases where minor children are involved. 43 O.S.2001, § 120.2–120.3 What distinguishes the group that would come to court under these three scenarios versus married parent is simply the invocation of jurisdiction of the court to make orders affecting parental rights and responsibilities. These families do not have the parents living in the same intact home.

¶ 9 In *Nelson,* this Court found that a person who stands in a parental role and who has invoked the jurisdiction of the court in an action which will alter the characteristics of the parental unit, may be required to take an educational course intended to lessen the impact of the change on the minor children. The simple class distinction is that if minor children are not involved, the requirement does not apply. The classification affecting the litigants who had minor children recognized the harmful impact of divorce on children and was attempting to minimize the involvement of the minors in the parental conflict. *Nelson,* 1998 OK 10 ¶ 13, 954 P.2d 1219. We found in *Nelson* that the class distinction did not violate equal protection.

¶ 10 In the present matter the class presented does not violate equal protection. States have a strong interest in controlling the divorcing process. *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 904, 106 S.Ct. 2317, 2322, 90 L.Ed.2d 899 (1986); *Nelson v. Nelson,* 1998 OK 10, ¶ 14, 954 P.2d 1219. Taking jurisdiction over the children of divorcing parents is especially critical. Two parents now living in separate households require delineated times of parent access and responsibilities which are not the case in either married parents or divorcing couples without children. For this reason this classification is bona fide, and not arbitrary or capricious.

¶ 11 The next part of the equal protection test is whether the statute bears a reasonable relationship to a legitimate state interest sought to be protected. This is clearly a case where the interest of the State, that being the child's best interest in having two active natural parents, is legitimate. It reasonably relates to the government's legitimate concern that the best interests of minor children of divorcing parents be served. *Nelson v. Nelson,* 1998 OK 10, ¶ 14, 954 P.2d 1219.

## DUE PROCESS

¶ 12 To determine that there was a violation of due process on substantive grounds we must ascertain that in the instant matter, absent some jeopardy to the health and safety of children, the government intruded into the familial relationship by requiring the Mother to participate with a parental coordinator to assist in communications and aid the court in the furtherance of post-divorce visitation. However, in determining whether the order or statute constituted a substantive due process violation, a balance must be struck between the right protected and the demands of society. *Youngberg v. Romeo,* 457 U.S. 307, 320, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982).

¶ 13 The mother in the instant matter seems to argue that there are no limitations on the parenting coordinator. She argues that the coordinator somehow micro-manages the family thus taking away her rights as custodial parent to make decisions. However, the order appointing the coordinator in the instant matter is limited to matters that aid in the communication of the parties and the enforcement of the court's order of custody, visitation or guardianship.

¶ 14 The Statute that grants the power to Oklahoma Courts to appoint Parenting Coordinators puts strict guidelines on their use. 43 O.S. Supp.2003 § 120.3 provides:

A. In any action for dissolution of marriage, legal separation, paternity, or guardianship where minor children are involved, the court may, upon its own motion, or by motion or agreement of the parties, appoint a parenting coordinator to assist the parties in resolving issues and decide disputed issues pursuant to the provisions of the Parenting Coordinator Act related to parenting or other family issues in the case except as provided in subsection B of this section, and subsection A of Section 120.5 of this title.

B. The court shall not appoint a parenting coordinator if any party objects, unless:

1. The court makes specific findings that the case is a high-conflict case; and

2. The court makes specific findings that the appointment of a parenting coordinator is in the best interest of any minor child in the case.

C. 1. The authority of a parenting coordinator shall be specified in the order appointing the parenting coordinator and limited to matters that will aid the parties in:

a. identifying disputed issues,

b. reducing misunderstandings,

c. clarifying priorities,

d. exploring possibilities for compromise,

e. developing methods of collaboration in parenting, and

f. complying with the court's order of custody, visitation, or guardianship.

2. The appointment of a parenting coordinator shall not divest the court of its exclusive jurisdiction to determine fundamental issues of custody, visitation, and support, and the authority to exercise management and control of the case.

3. The parenting coordinator shall not make any modification to any order, judgment or decree; however, the parenting coordinator may allow the parties to make minor temporary departures from a parenting plan if authorized by the court to do so. The appointment order should specify those matters which the parenting coordinator is authorized to determine. The order shall specify which determinations will be immediately effective and which will require an opportunity for court review prior to taking effect.

D. The parties may limit the decision-making authority of the parenting coordinator to specific issues or areas if the parenting coordinator is being appointed pursuant to agreement of the parties.

E. Meetings between the parenting coordinator and the parties need not follow any specific procedures and the meetings may be informal. All communication between the parties and the parenting coordinator shall not be confidential.

F. Nothing in the Parenting Coordinator Act shall abrogate the custodial or noncustodial parent's rights or any court-ordered visitation given to grandparents or other persons except as specifically addressed in the order appointing the parenting coordinator.

G. 1. Except as otherwise provided by this subsection, the court shall reserve the right to remove the parenting coordinator in its own discretion.

2. The court may remove the parenting coordinator upon the request and agreement of both parties. Upon the motion of either party and good cause shown, the court may remove the parenting coordinator.

¶ 15 Mother does not outline how the custodial parent's rights have been abrogated by the issues to be decided. She has not shown that the order in the instant case or the statute itself gives the parenting coordinator authority to hear and decide more than issues limited to matters that aid in the communication of the parties and the enforcement of the court's order. The extent to which a parent may be inconvenienced by cooperating with a parenting coordinator is subordinate to the need to protect the child's welfare. We find that the parenting coordinator act is not unconstitutional on procedural or substantive due process grounds. We also find that the actions of the trial court did not wrongfully assign the rights of the custodial parent to third parties.

## THE TRIAL COURT ERRED IN FAILING TO INCLUDE CHILD CARE COSTS WITH BASE CHILD SUPPORT FOR PURPOSES OF INCOME ASSIGNMENT.

¶ 16 The trial court in its order modifying, ordered the Father to pay child support as well as daycare expenses. However, no determination was made as to the amount of daycare expenses. The first notice of the amount of this cost was made in the Order/Notice to Withhold Income for Child Support, from which, the trial court deleted the portion withheld that paid the Father's share of daycare expenses.

¶ 17 Title 12 O.S.2001 § 1171.2 reads in pertinent part:

A. Any person awarded custody of and support for a minor child by the district court ... shall be entitled to proceed to collect any current child support and child support due and owing through income assignment ...

Title 12 O.S.2001 § 1170 defines child support as:

10. "Child support" means and includes all payments or other obligations due and owing to the person entitled by the obligor pursuant to a child support order, including but not limited to medical insurance or health care premiums and other medical expenses, current child care obligations, child care arrearages and any fixed child care obligations and such other expenses and requirements as specified in Section 118 of Title 43 of the Oklahoma statutes;

Title 43 O.S.2001, § 115 provides in pertinent part:

B. In all child support cases arising out of an action for divorce, paternity or other proceedings in which services are not being provided under the state child support plan, the district court shall order the wage of the obligor subject to immediate income assignment regardless of whether support payments by such parent are in arrears, unless:

1. One of the parties demonstrates and the district court finds there is good cause not to require immediate income withholding; or

2. A written agreement is reached between the parties which provides for an alternative arrangement.

¶ 18 Under Oklahoma statute, child care expenses are to be considered a part of the total child support due to the mother, and it is also collectable in an income assignment unless good cause is shown for not requiring it, or the parties reach an alternative agreement. In the present matter neither of these exceptions is apparent. Therefore, as to this issue, we remand to allow the trial court to determine the amount owed by the father for income assignment purposes.

**APPEAL RELATED ATTORNEY FEES**

¶ 19 Attorney fees on appeal, much like taxable costs, may be allowed in the case in which the services were performed. The terms of 43 O.S.2001 § 110 provide that either spouse may be required to pay "reasonable expenses of the other as may be just and proper under the circumstances." Attorney-fee allowances claimed in family law matters under § 110 never depend on one's status as prevailing party in the case. Nonetheless, they may be granted under the statute if this Court finds such an award equitable. *Barnett v. Barnett,* 1996 OK 60 ¶ 14 917 P.2d 473.

¶ 20 Based on our review of the record, there are no compelling or overriding equitable considerations in favor of either litigant. We hence hold that each party shall bear its own counsel-fee and other litigation expenses incurred in the present appeal.

**JUDGMENT OF THE DISTRICT COURT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

¶ 21 CONCUR: WATT, C.J., WINCHESTER, V.C.J., LAVENDER, KAUGER, EDMONDSON, COLBERT, JJ.

¶ 22 CONCUR SPECIALLY: TAYLOR, (At trial, the appellant did not object to or raise the allegation of unconstitutionality of the Parenting Coordinator Act at any time. Further the appellant agreed to the appointment of a parenting coordinator and agreed to utilize the parenting coordinator.), J.

¶ 23 CONCUR IN RESULT: OPALA (joins TAYLOR, J.), J.