2017 OK 78

**Brandon Michael GIBBY, Petitioner,**

**v.**

**HOBBY LOBBY STORES, INC., Indemnity Insurance Co. of North America, and the Workers' Compensation Commission, Respondents.**

**Case Number: 114065**

Supreme Court of Oklahoma.

Decided: 10/03/2017

26. 21 O.S. 843.5(E).

27. *Id.* 843.5(H).

28. 21 O.S. 1114(A)(1).

29. *Id.* 1114(A)(2).

30. *Id.* 1114(A)(5).

Bob Burke, Gary Prochaska, Oklahoma City, Oklahoma, for Petitioner.

James C. Ferguson, Bruce V. Winston, Walker, Ferguson & Ferguson, Oklahoma City, Oklahoma, for Respondents.

Sarah A. Greenwalt, Assistant Solicitor General, Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma.

V. Glen Coffee, Denise K. Davick, Glen Coffee & Associates, Oklahoma City, Oklahoma, for amicus curiae, State Chamber of Commerce.

Mark E. Schell, Andrew E. Harding, Tulsa, Oklahoma, for amicus curiae, Unit Corporation.

COLBERT, J.

¶ 1 This appeal determines the constitutionality of section 57 of the Administrative Worker's Compensation Act (AWCA), found at title 85A of the Oklahoma Statutes. Following a review of the record on appeal, the transcripts of the proceedings below, and the briefs of the parties and <u>amici</u>, this Court holds the forfeiture provision found at section 57 of title 85A violates the adequate remedy provision of Article II, section 6, of the Okla-

homa Constitution. The section 57 forfeiture provision is therefore stricken in its entirety.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Claimant, Brandon Michael Gibby, injured his right wrist and left knee on February 12, 2014, when he fell three to four feet from a pallet jack while in the course and scope of his employment. Employer, Hobby Lobby Stores, provided temporary total disability and medical benefits. However, when Claimant sought permanent partial disability, Employer asserted that the forfeiture provision, section 57 of the (AWCA) prohibited Claimant from receiving any further workers' compensation benefits because he had missed two or more scheduled medical appointments without a valid excuse or notice to his employer.

¶ 3 A trial was held at which Claimant attempted to demonstrate extraordinary circumstances for missing three scheduled medical appointments. The administrative law judge found none and denied the request for permanent partial disability despite the fact there was no dispute that Claimant's injury had left him disabled. The Workers' Compensation Commission affirmed. This Court retained this appeal to address the constitutionality of the forfeiture provision.

## STANDARD OF REVIEW

¶ 4 Review of the constitutionality of a judgment, decision, or award of the Workers' Compensation Commission presents a question of law. See Coates v. Fallin, 2013 OK 108, 316 P.3d 924. See also Okla. Stat. tit. 85A, 78(C)(1) (Supp. 2013). Questions of law are reviewed de novo. Kluver v. Weatherford Hosp. Auth., 1993 OK 85, 859 P.2d 1081.

## ANALYSIS

### Article II, Section 6

¶ 5 Article II, section 6, of the Oklahoma Constitution provides: "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right

and justice shall be administered without sale, denial, delay, or prejudice." This provision "embodies three distinct constitutional guarantees: (1) access to the courts; (2) right-to-a-remedy for every wrong and every injury to person, property, or reputation; and (3) prohibition on the sale or denial of justice." Torres v. Seaboard Foods, LLC, 2016 OK 20, 373 P.3d 1057, 1081-82 (Colbert, J. concurring, 12). Claimant challenges the forfeiture of workers' compensation benefits provision found at section 57 of title 85A pursuant to the "right to a remedy" provision of Article II, section 6.

¶ 6 Section 57 provides:

A. If an injured employee misses two or more scheduled appointments for treatment, he or she shall no longer be eligible to receive benefits under this act, unless his or her absence was:

1. Caused by extraordinary circumstances beyond the employee's control as determined by the Commission; or

2. The employee gave the employer at least two (2) hours prior notice of the absence and had a valid excuse.

B. Inability to get transportation to or from the appointment shall not be considered extraordinary circumstances nor a valid excuse for the absence.

Okla. Stat. tit. 85A, 57 (Supp. 2013)(eff. Feb. 1, 2014). To properly understand the effect of Article II, section 6, on this forfeiture provision, the relation between the Oklahoma Constitution and the Grand Bargain must be appreciated.

¶ 7 Prior to Oklahoma's adoption of workers' compensation in 1915, a worker who was injured in an industrial accident was required to seek redress in the District Court by proving that the employer was negligent. This occurred at a time when a worker was the sole breadwinner. Most of the time, an injured worker who brought a claim for common law negligence would lose, resulting in destitution of the worker's entire family. To avoid destitution that resulted from the epidemic of industrial accidents occurring at the beginning of the twentieth century, combined with awards which were inadequate, inconsistent, and uncertain, an Industrial Bargain

was legislatively imposed. It was later known as the Grand Bargain as workers' compensation was expanded to nonindustrial forms of employment.

¶ 8 Under the Bargain, the employee gave up his remedy of an action for negligence against his employer and received automatic guaranteed medical and wage benefits. The employer gave up the defenses of contributory negligence, the fellow servant doctrine, and assumption of risk. In return, the employer received reduced exposure to liability. Thus, workers' compensation was developed as a mechanism for providing medical care and wage benefits and placing the cost of these benefits on industry initially through insurance and ultimately on the consumer through the product or service it provided.

 ¶ 9 The first challenge to the constitutionality of Oklahoma's workers' compensation statutes came in Adams v. Iten Biscuit Co., 1917 OK 47, 63 Okla. 52, 162 P. 938. There, the question was limited to the "power upon the part of the Legislature to enact such [workers' compensation] legislation." Id., ¶17, 63 Okla. 52, 162 P. 938. The Legislature's power to do so was upheld under the police power and Article II, section 6. The Adams Court accepted the substitute remedy created by the Grand Bargain noting that the employee there "was deprived of no vested right, but the effect of the law was simply to change the common-law rule of liability for accidental injuries, and to substitute a new system of compensation." Id. ¶14, 63 Okla. 52, 162 P. at 944. It further noted: "The [workers' compensation] act here in question takes away the cause of action on the one hand and the ground of defense on the other, and merges both in a statutory indemnity, fixed and certain." Id. ¶15, 63 Okla. 52, 162 P. at 944 quoting State ex rel. Clausen, 65 Wash. 156, 117 P. 1101, 1119 (1911). Adams demonstrates that in order to pass constitutional muster under Article II, section 6, a workers' compensation provision must be measured against the delicate balancing of rights of employers and employees which

constitutes the Grand Bargain. See Torres, 2016 OK 20, 373 P.3d 1057 (Colbert, J. concurring with whom Watt, J. joins).

¶ 10 The challenged provision forfeits all workers' compensation benefits when an injured worker misses two or more medical appointments without a determination of extraordinary circumstances by the commission or a valid excuse to the employer at least two hours prior to the appointment.[1] Under the statute, the inability of the injured worker "to get transportation to or from the appointment" is never an extraordinary circumstance or a valid excuse.

 ¶ 11 Section 57 lies far outside the parameters of the Grand Bargain upheld in Adams. In addition, it operates to forfeit existing vested rights to workers' compensation benefits[2]. CNA Ins. Co. v. Ellis, 2006 OK 81, ¶14, 148 P.3d 874, 877 ("The right to compensation and the obligation to pay such benefits becomes vested and fixed by law at the time of the claimant's injury."). The rights that vest on injury may not be destroyed except by due process of law. Adams, ¶10 (quoting Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556 (1916)).

¶ 12 In addition, this Court must remain "mindful of this State's strong statutory policy (as well as that of the surviving common law) which disfavors both private and public law forfeitures." Hendrick v. Walters, 1993 OK 162, ¶7, 865 P.2d 1232, 1238-39 (emphasis and footnote omitted). Clearly the Legislature intended that a forfeiture take place when an injured worker misses two or more physician appointments under the statutory criteria articulated in section 57. There is no construction from which this Court could conclude otherwise.

¶ 13 The forfeiture provision tips the delicate balance achieved in the Grand Bargain too far in favor of employers and therefore it fails to provide an adequate substitute remedy to injured workers as required by the constitutional mandate of Article II, section 6. It "reinstates the concept of fault into a

---

1. The text of the statute charges the commission with determining whether "extraordinary circumstances" exist for missing the appointment and appears to do so concerning "valid excuse."

2. The provision of workers' compensation benefits include monetary and nonmonetary awards. Meeks v. Guarantee Ins. Co., 2017 OK 17, ¶12, 392 P.3d 278, 285.

no-fault system and results in a forfeiture of benefits by the injured employee." Maxwell v. Sprint PCS, 2016 OK 41, ¶25, 369 P.3d 1079. Section 57 of Title 85A is unconstitutional and therefore it is stricken in its entirety.

¶ 14 With section 57 stricken, and therefore unavailable for application to missed physician appointments, the question becomes: Is there a provision that applies to this claim? Claimant argues that, if section 57 is unconstitutional, the exclusive remedy provision of section 5 of the AWCA should be lifted [3] so that the worker may proceed in the District Court.

¶ 15 This Court need not address the worker's proposed remedy. There is another provision at section 50 of the AWCA which specifically deals with the issue of missed physician appointments:

> If an employee fails to appear for a scheduled appointment with a physician, the employer or insurance company shall pay to the physician a reasonable charge, to be determined by the Commission, for the missed appointment. In the absence of a good-faith reason for missing the appointment, the Commission shall order the employee to reimburse the employer or insurance company for the charge.

Okla. Stat. tit. 85A, 50(H)(12) (Supp. 2013). The provision is nearly identical to a provision of the Oklahoma Workers' Compensation Code which covers injuries occurring before February 1, 2014. It provides:

> In the event an employee fails to appear for a scheduled appointment with a physician, the employer or insurance company shall pay to the physician a reasonable charge, to be determined by the Administrator [of the Workers' Compensation Court], for the missed appointment. In the absence of a good-faith reason for missing the appointment, The Court shall order the employee to reimburse the employer or insurance company for such charge.

Okla. Stat. tit. 85, 327 (L) (2011).

¶ 16 The provisions found at sections 57 and 50(H)(12) of the AWCA provide very different solutions to the problem of missed physician appointments by an injured worker. However, no mention of the dueling provisions is made by the parties or the amici. Only the constitutionality of section 57 has been challenged or addressed by this Court. Section 50(H)(12) is now the controlling provision concerning missed physician appointments.

¶ 17 The arguments made by Employer and the amici aligned with it concerning the legislative objective underlying section 57 of the AWCA can be summarized as a legislative incentive to injured workers to keep their medical appointments. The parties aligned with Employer claim that this will allow injured workers to reach maximum medical improvement as soon as possible. This, they argue, will provide consistent medical care to injured workers while providing cost savings to employers and preventing fraud and abuse. It defies logic to conclude that arbitrarily cutting off all vested benefits and statutory indemnity furthers any of those goals. We reiterate, taking away an employee's vested benefits because of missed appointments—an action based on fault of the employee—is invalid in a no-fault system. See, Maxwell v. Sprint PCS, 2016 OK 41, ¶27, 369 P.3d 1079, 1093. The section 57 forfeiture provision is hereby stricken.

## CONCLUSION

¶ 18 The Oklahoma Legislature failed to draft the section 57 forfeiture provision within the parameters of the Oklahoma Constitution. As a result, it violates the adequate remedy provision of Article II, Section 6 of the Constitution, which is the basis for the Grand Bargain. The forfeiture provision is stricken and the provision concerning missed appointments, found at section 50(12), remains.

## REVERSED AND REMANDED.

Concur: Combs, C.J., Watt, Edmondson, Colbert and Reif, JJ.

---

3. Section 5(C) provides: "the immunity from civil liability described in subsection A of this section shall apply regardless of whether the injured employee is denied compensation or deemed ineligible to receive compensation under this act." Okla. Stat. tit. 85A, 5(C) (Supp. 2013).

Dissent: Gurich, V.C.J. (by separate writing), Kauger and Winchester, JJ.

Recused: Wyrick, J.

Gurich, V.C.J., with whom Kauger, J., joins dissenting:

¶1 This Court's precedent directs that "[w]here there are two possible interpretations in the construction of a statute, one of which would render the statute unconstitutional, the Court should adopt the construction which upholds the statute, unless the repugnancy to the constitution is shown beyond a reasonable doubt." Gilbert Cent. Corp. v. State, 1986 OK 6, ¶7, 716 P.2d 654, 658. Because the Petitioner has not shown that 57 of Title 85A is repugnant to the constitution beyond a reasonable doubt and because 57 can be interpreted so as to avoid constitutional doubt, we are bound to accept the interpretation that upholds the provision. For the reasons set forth below, I respectfully dissent.

### Relevant Facts

¶2 *On February 12, 2014, Petitioner, Brandon Gibby, injured his right wrist and left knee in the course and scope of his employment with Respondent, Hobby Lobby Stores, Inc. Mr. Gibby reported the injury and attempted to work the next day but was unable to do so. Hobby Lobby admitted Mr. Gibby suffered a workplace injury and sent him for examination the day after the injury. He was prescribed medication and was fitted with a splint for his wrist. He remained off work and underwent an MRI on his wrist on February 27, 2014. He received further medication and treatment for his wrist. Mr. Gibby then underwent an MRI on his knee on March 27, 2014. He returned to work on April 29, 2014, but continued to receive treatment for his injuries and underwent physical therapy for several weeks. Mr. Gibby received temporary total disability benefits from February 21, 2014, through April 29, 2014.*

¶3 On June 2, 2014, Mr. Gibby was scheduled to see Dr. Dumigan for additional treatment, but did not show up for the appointment. The medical notes reflect that Mr. Gibby did not call and was charged a no-show fee. Mr. Gibby testified he overslept but that he called and rescheduled. Although he testified he then attended the rescheduled appointment, the record does not include any medical notes reflecting the rescheduled visit. Mr. Gibby saw Dr. Kiehn on June 24, 2014, and Dr. Kiehn's notes state that Mr. Gibby "appears to be doing fine" and that he "would release him at [maximum medical improvement] at this point."[1] On June 30, 2014, Mr. Gibby filed a CC-Form-A requesting a change of physician. The parties agreed on Dr. Janssen, and Mr. Gibby saw Dr. Janssen on August 11, 2014. Dr. Janssen recommended therapy, bracing, and anti-inflammatories for Mr. Gibby's knee and scheduled him to return in three weeks for a follow-up. He estimated Mr. Gibby would reach maximum medical improvement in two to three months.

¶4 Mr. Gibby was scheduled to see Dr. Janssen on September 12, 2014, but did not attend the appointment. The medical chart for the visit indicates Mr. Gibby was a "no-show."[2] Mr. Gibby testified he got lost in downtown Oklahoma City and called about five minutes before he was to be seen to reschedule the appointment. Again, he testified he attended the rescheduled appointment but nothing in the record substantiates that testimony. Mr. Gibby was scheduled to see Dr. Janssen on October 20, 2014. He did not attend this appointment. Dr. Janssen's notes for that visit state:

> Brandon was scheduled to be seen today. He has had multiple no-shows, a total of four. I last saw him in August. I am assuming his knee must be fine or he would be showing up for his appointments. Today I am considering Brandon MMI and he is released without restrictions on his left knee.[3]

On October 27, 2014, Hobby Lobby filed a CC-Form-13 requesting that all benefits be terminated pursuant to 85A O.S. Supp. 2013

---

1. Record on Appeal at 48.

2. Record on Appeal at 62.

3. Record on Appeal at 59.

57, citing the missed appointments by Mr. Gibby.

¶5 On January 12, 2015, the parties appeared for a hearing with the assigned ALJ, and the ALJ continued the hearing and ordered the parties to "get [the] PPD reports."[4] Mr. Gibby saw Dr. Young on February 27, 2015, for an independent medical examination, wherein Dr. Young found 2% permanent partial impairment to the right wrist and 0% permanent partial impairment to the left knee.[5] Mr. Gibby also saw Dr. McClure for an independent medical examination, and pursuant to that examination, Dr. McClure found Mr. Gibby suffered a 5% permanent partial impairment to the body as a whole for the injury to the left knee and suffered an 8% permanent partial impairment to the body as a whole due to the injury to the right wrist.[6]

¶6 The parties submitted their permanent partial disability reports, and a hearing was held on March 30, 2015, wherein Mr. Gibby was the only witness to testify. On April 29, 2015, the ALJ filed an Order Denying Permanent Partial Disability. In that order, the ALJ made no finding with regard to Mr. Gibby's permanent partial impairment, but denied permanent partial disability benefits pursuant to 85A O.S. Supp. 2013 57. The ALJ found that Mr. Gibby "admitted he missed three medical appointments for treatment," and that Mr. Gibby offered no evidence that he gave two hours' notice of the absence with a valid excuse.[7] The ALJ also found no extraordinary circumstances existed for Mr. Gibby's failure to attend the appointments, so 57 prohibited him from receiving permanent partial disability benefits.[8] The Commission affirmed the decision of the ALJ, and this Court retained the appeal.

## Analysis

¶7 *The statute at issue in this case, Section 57 of Title 85A, provides:*

A. If an injured employee misses two or more *scheduled appointments for treatment,* he or she shall no longer be eligible to receive *benefits* under this act, unless his or her absence was:

1. Caused by extraordinary circumstances beyond the employee's control as determined by the Commission; or

2. The employee gave the employer at least two (2) hours prior notice of the absence and had a valid excuse.

B. Inability to get transportation to or from the appointment shall not be considered extraordinary circumstances nor a valid excuse for the absence.[9]

Section 57 does not specify the type of "benefits" to be terminated when an injured employee misses two or more scheduled appointments for treatment. The ALJ determined that 57 allowed denial of *permanent partial* disability benefits due to the missed appointments for *medical treatment,* but I disagree.

¶8 Permanent disability benefits are not determined or awarded based on the continued *treatment* of the injured employee. Rather, permanent disability benefits are awarded once an injured worker reaches "maximum medical improvement" and "no further material improvement would reasonably be expected from medical treatment or the passage of time."[10] Upon reaching maxi-

---

4. Transcript of Hearing at 6 (Mar. 30, 2015).

5. Mr. Gibby was scheduled to see Dr. Young on February 9, 2015, but did not attend the appointment.

6. Mr. Gibby initially saw Dr. McClure on November 4, 2014. Dr. McClure then submitted a supplemental report on March 4, 2015, at the request of Mr. Gibby's counsel, wherein Dr. McClure's permanent partial impairment rating was calculated pursuant to the AMA Guides 5th Edition. Pursuant to the 5th Edition, Dr. McClure found Mr. Gibby had suffered a 35% permanent partial impairment to the right wrist and 26% permanent partial impairment to the left knee.

7. Record on Appeal at 26.

8. Because 57 was incorrectly applied in this case, we need not decide whether extraordinary circumstances is an arbitrary standard subject to invalidation under the due process clause.

9. 85A O.S. Supp. 2013 57 (emphasis added).

10. 85A O.S. Supp. 2013 2(28). In contrast, temporary disability benefits are provided to an injured worker during the period of healing *and while the worker undergoes treatment for the workplace injury.* Gray v. Natkin Contracting, 2001 OK 73, ¶¶12-13, 44 P.3d 547, 550-51.

mum medical improvement, an injured employee is *evaluated* by an independent medical examiner, and the examiner sets forth his or her opinion regarding the injured worker's percentage of permanent disability based on physical loss of use related to the workplace injury. See 85A O.S. Supp. 2013 2(33).

¶ 9 Countless examples abound throughout the AWCA wherein the Legislature distinguishes between *treatment* and *evaluation.* Section 50(G) provides that "[t]he employer shall reimburse the employee for the actual mileage in excess of twenty (20) miles round-trip to and from the employee's home to the location of a medical service provider for all reasonable and necessary *treatment,* for an *evaluation* of an independent medical examiner and for any evaluation made at the request of the employer or insurance carrier." 85A O.S. Supp. 2013 50(G) (emphasis added). Section 53(B) provides that "[i]n cases where the Commission directs *examination or treatment*, proceedings shall be suspended...." 85A O.S. Supp. 2013 53(B) (emphasis added). Section 112(F), which sets forth the procedure to select and appoint an independent medical examiner provides: "After a physical *examination* and review of medical records and other appropriate information, including depositions and surveillance video, the independent medical examiner shall submit a verified written report to the Commission and to the parties. In the event the independent medical examiner determines that more medical *treatment* is

necessary, the employer shall designate a treating physician to provide the indicated treatment." 85A O.S. Supp. 2013 112(F) (emphasis added).

¶ 10 Because of the Legislature's specific use of the phrase *"scheduled appointments for treatment"* in 57, I would interpret 57 so as to allow the termination of those benefits directly related to such treatment.[11] Benefits related to *treatment* of a workplace injury could include temporary partial disability, temporary total disability, or in some instances, continuing medical maintenance, but would not include permanent partial or permanent total disability benefits.[12] Under the facts of the case before us, Mr. Gibby was still in treatment for his workplace injury when he missed the medical appointments on June 2, 2014, September 12, 2014, and October 20, 2014.[13] In fact, those appointments were "scheduled appointments for treatment" as the term is used in 57. Thus, Hobby Lobby's remedy for Mr. Gibby's failure to attend the scheduled medical appointments for treatment was to terminate Mr. Gibby's *temporary total disability benefits.*[14]

¶ 11 Because Mr. Gibby's temporary total benefits had already ceased on April 29, 2014, Hobby Lobby's only other remedy was to seek reimbursement for the cost of the missed appointments under 50(H)(12) of Title 85A. That section provides:

> If an employee fails to appear for *a scheduled appointment with a physician*, the

---

**11.** "The primary goal of statutory construction is to ascertain and follow legislative intent." Bober v. Okla. State Univ., 2016 OK 78, ¶11, 378 P.3d 562, 565. We "presume[ ] that the law-making body has expressed its intent in a statute's language and that it intended what it so expressed. If the meaning of a statute is plain and unambiguous, it will not be subjected to rules of judicial construction but will receive the effect its language dictates." Villines v. Szczepanski, 2005 OK 63, ¶9, 122 P.3d 466, 470.

**12.** In some cases, an injured worker can reach maximum medical improvement but still require medical treatment. In such cases, the "benefit" awarded includes continuing medical maintenance. See 85A O.S. Supp. 2013 2(12) (defining continuing medical maintenance as "medical treatment that is reasonable and necessary to maintain claimant's condition resulting from the compensable injury or illness after reaching maximum medical improvement").

**13.** At the time Hobby Lobby filed its motion to terminate benefits, Mr. Gibby had not yet reached maximum medical improvement and had not been evaluated by an independent medical examiner for purposes of permanent partial disability.

**14.** Section 45(A)(2) of Title 85A also discusses termination of temporary total disability benefits upon an injured employee missing "three consecutive medical treatment appointments." However, I do not read 57 to be inconsistent with 45(A)(2). Under the facts of this case, Hobby Lobby could have proceeded under either provision to terminate Mr. Gibby's temporary total benefits had Mr. Gibby still been receiving such benefits at the time of the missed appointments for treatment.

employer or insurance company shall pay to the physician a reasonable charge, to be determined by the Commission, for the missed appointment. In the absence of a good-faith reason for missing the appointment, the Commission shall order the employee to reimburse the employer or insurance company for the charge.[15]

Mr. Gibby's scheduled appointments for treatment would fall under the purview of 50(H)(2) so long as the appointments were with a "physician." [16]

¶ 12 I would not invalidate 57 on constitutional grounds. I would find that the Commission incorrectly applied 57 to prevent Mr. Gibby from pursuing an award of permanent

partial disability. I would vacate the order of the Commission and remand the case for further proceedings. On remand, Hobby Lobby can seek reimbursement for the cost of the missed medical appointments. The issue of permanent partial disability should be resubmitted to the ALJ for consideration of all medical evidence with regard to Mr. Gibby's request for permanent partial disability.

---

**15.** 85A O.S. Supp. 2013 50(H)(12).

**16.** Section 50(H)(12) again demonstrates that the Legislature knew how to distinguish between scheduled appointments with physicians generally and scheduled appointments specifically for medical treatment. If the Legislature had meant to include scheduled appointments with any physician in Section 57 it could have easily done so, but it did not.