OSCN Found Document:JONES v. CABLER

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 JONES v. CABLER
2023 OK CIV APP 10
529 P.3d 920
Case Number: 119459
Decided: 07/29/2022
Mandate Issued: 04/20/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2023 OK CIV APP 10, 529 P.3d 920

 

RANDY JONES, Plaintiff/Appellant,
v.
CHARLES CABLER and HOBBY LOBBY STORES, INC., Defendants,
and
AGC COMP & SAFETY GROUP and SMART CASUALTY CLAIMS, Intervenors/Appellees.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE SUSAN C. STALLINGS, TRIAL JUDGE

AFFIRMED

Joey Chiaf, Oklahoma City and Bob Burke, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Donald A. Bullard, BULLARD & ASSOCIATES, PLLC, Oklahoma City, Oklahoma, for Intervenors/Appellees

GREGORY C. BLACKWELL, JUDGE:

¶1 Randy Jones appeals a decision of the district court finding his workers' compensation insurer was entitled to a subrogation reimbursement of $44,254 from the proceeds of his tort recovery against the third parties who caused his injuries. Jones challenges (1) the constitutionality of the statutory workers' compensation subrogation statute, and (2) whether, if the statute is constitutional, the insurer can recover reimbursement for amounts spent on a "medical case manager." We affirm, finding the relevant statutory provision to be constitutional and that the appellant has failed to show that reimbursement for the medical case manager was outside the statutory framework.

BACKGROUND

¶2 In 2017, Randy Jones was injured while working at an on-ramp to Interstate 44 in Oklahoma City. Jones was working for "Action Safety Supply" at the time and was engaged in "paint stripping" on the ramp when the paint stripping equipment was hit by a vehicle driven by an employee of Hobby Lobby, Inc. Jones sought and received worker's compensation benefits on account of the injuries he sustained in the collision. In 2019, Jones sued the driver for negligence and Hobby Lobby for negligent entrustment. Jones eventually settled with those parties for $160,000.

¶3 In the district court, the appellees, as the employer's worker's compensation insurers, asserted a subrogation interest of $44,254[1] in this settlement to recoup the workers' compensation benefits they had paid. Jones filed a "Motion for Determination of Subrogation Interest" arguing that the subrogation provisions and lien provisions of 85A O.S.Supp.2014, § 43 were unconstitutional. The insurers moved to intervene to argue for their subrogation interests. The district court granted intervention and ruled that the insurers were entitled to the full subrogation reimbursement. Jones appeals.

STANDARD OF REVIEW

¶4 The issue of a statute's constitutional validity is a question of law subject to de novo review. Brown v. Claims Mgmt. Resources, Inc., 2017 OK 13, ¶ 9, 391 P.3d 111. Under that standard, we assume plenary, independent, and non-deferential authority to reexamine the lower tribunal's legal rulings. Id. Likewise, questions of statutory construction are subject to de novo review. Humphries v. Lewis, 2003 OK 12, ¶ 3, 67 P.3d 333, 335.

ANALYSIS 

The Constitutional Challenge

¶5 As to his argument that Title 85A's subrogation statute, 85A O.S. § 43, is unconstitutional under state and federal provisions, Jones offers two propositions of error:

(1) The automatic subrogation lien on third party proceeds is an unconstitutional denial of federal and state Due Process as an arbitrary limit to benefit the employer that shifts the economic burden to the injured worker.

(2) The automatic subrogation lien is unconstitutional because it is a special law.

Brief-in-chief, pg 2. As to the first proposition, he argues that his compensation benefits constituted a vested property right and allowing either a lien on his litigation proceeds, or allowing subrogation at all, constitutes an "unconstitutional forfeiture of benefits;" that the two-thirds lien provision of § 43 constitutes an "arbitrary number picked from the air without any rational basis or legitimate state interest;" and that § 43 "creates a situation where the Appellees get a free ride and do not pay any part of the attorney's fees and costs in the third party action."

¶6 In undertaking our review of these challenges, we must recall that there is a strong presumption which favors the constitutionality of legislative enactments. Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34, ¶ 18, 148 P.3d 842; Barnes v. Barnes, 2005 OK 1, ¶ 5, 107 P.3d 560; Nelson v. Nelson, 1998 OK 10, ¶ 12, 954 P.2d 1219. The presumed constitutionality of a legislative enactment is rebutted only when the enactment is prohibited by either the Oklahoma Constitution or federal law. Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 17, 373 P.3d 1057. The party seeking a statute's invalidation as unconstitutional has the burden to show the statute is clearly, palpably, and plainly inconsistent with the Oklahoma Constitution. Lafalier v. Lead-Impacted Communities Relocation Assistance Trust, 2010 OK 48, ¶ 15, 237 P.3d 181; EOG Resources Marketing, Inc. v. Okla. State Bd. of Equalization, 2008 OK 95, ¶ 13, 196 P.3d 511.

¶7 For clarity and later reference, we quote the full statute here, with the most relevant portions highlighted.

A. Liability Unaffected.

1. a. The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his or her dependents, to make a claim or maintain an action in court against any third party for the injury.

b. The employer or the employer's carrier shall be entitled to reasonable notice and opportunity to join in the action.

c. If the employer or employer's carrier join in the action against a third party for injury or death, they shall be entitled to a first lien on two-thirds (2/3) of the net proceeds recovered in the action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his or her dependents.

2. The commencement of an action by an employee or his or her dependents against a third party for damages by reason of an injury to which this act is applicable, or the adjustment of any claim, shall not affect the rights of the injured employee or his or her dependents to recover compensation, but any amount recovered by the injured employee or his or her dependents from a third party shall be applied as follows:

a. reasonable fees and costs of collection shall be deducted,

b. the employer or carrier, as applicable, shall receive two-thirds (2/3) of the remainder of the recovery or the amount of the workers' compensation lien, whichever is less, and

c. the remainder of the recovery shall go to the injured employee or his or her dependents.

B. Subrogation.

1. An employer or carrier liable for compensation under this act for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for the injury or death. However, the employer or the carrier shall notify the claimant in writing that the claimant has the right to hire a private attorney to pursue any benefits to which the claimant is entitled in addition to the subrogation interest against any third party responsible for the injury or death.

2. After reasonable notice and opportunity to be represented in the action has been given to the injured employee, the liability of the third party to the compensation beneficiary shall be determined in the action, as well as the third party's liability to the employer and carrier.

3. If the employer recovers against the third party, by suit or otherwise, the injured employee shall be entitled to any amount recovered in excess of the amount that the employer and carrier have paid or are liable for in compensation, after deducting reasonable costs of collection.

4. An employer or carrier who is liable for compensation under this act on account of injury or death of an employee shall be entitled to maintain a third-party action against the employer's uninsured motorist coverage or underinsured motorist coverage.

Title 84A O.S.Supp.2014, § 43.

¶8 Jones cites Gibby v. Hobby Lobby Stores, Inc., 2017 OK 78, 404 P.3d 44, as supporting his position that subrogation laws such as we have here constitute an unconstitutional "forfeit" of benefits by allowing a workers' compensation insurer subrogation of up to 100% of benefits paid against a tort judgment or settlement paid on account of the same injury. However, Gibby involved 85A O.S. § 57, which literally enacted a forfeiture of benefits if an injured employee missed two or more scheduled appointments for treatment. The Supreme Court found such a forfeiture of a vested compensation award unconstitutional and struck the statute in its entirety. Gibby, ¶ 13. The Court held that the Legislature, having mandated the "Grand Bargain" that workers seek statutory compensation benefits in lieu of a right to sue their employer, could not then remove those benefits as a penalty, and retain the ban on suit against the employer, without violating the adequate remedy provision of Article II, Section 6 of the Constitution.[2] Gibby, ¶¶ 13, 18.

¶9 We find Gibby inapplicable here. Jones essentially argues that subrogation of a double recovery constitutes a similar forfeiture of benefits as was had in Gibby. We disagree. Here the question is not whether the injured worker will receive the benefit of the "Grand Bargain," but whether he will receive both that benefit, and any benefit received in a third-party suit. Absent subrogation, the injured worker will receive a double recovery for the same injury. Such a result is not mandated by Article II, Section 6.

¶10 Jones's citation to Torres v. Seaboard Foods, LLC, 2016 OK 20, 373 P.3d 1057, fares no better. Torres examined the act's definition of "cumulative trauma," which then declared that an employee who had suffered a work-related injury within the first 180 days of continuous active employment with the employer could not receive benefits for "cumulative trauma." Id. ¶ 5. Section 5 of the Act also prevented a worker who suffered such an injury in that period from suing the employer in district court. Id. ¶ 45. The Supreme Court again found the one-two punch of simultaneously denying both workers' compensation benefits and access to the courts unconstitutional.

¶11 Torres is distinguishable on the same basis as Gibby. Jones argues here that subrogation against a later recovery constitutes a forfeiture of a vested benefit similar to that found in Gibby, or an arbitrary denial of benefits as seen in Torres. Unlike Torres and Gibby, however, we have no denial of a right to compensation or forfeiture of a vested benefit. We have only a denial of a double recovery. We find no unconstitutional forfeiture of a property right or arbitrary denial of benefits by the application of subrogation.

¶12 Jones also argues that the "arbitrary nature" of the two-thirds lien provision--§ 43(A)(1)(c)--also works against the statute and in his favor. However, under our view, that provision provides a benefit to Jones, not a burden.[3]

¶13 The distribution equation here is clear. Out of Jones' $160,000 recovery, the "reasonable fees and costs of collection" are first deducted. Then the carrier receives two-thirds of the remaining recovery or the amount of its workers' compensation lien, whichever is less. Thus, a workers' compensation insurer can recover no more than they paid out, and the claimant receives at least one third of the net tort recovery, regardless of whether an insurer's subrogation interest has been satisfied. Thus, the two-thirds limitation actually injures the subrogation right of the insurer, and the insurer recovers less in subrogation than the benefits paid if two-thirds of the recovery is insufficient to cover the benefits. The Legislature has therefore actually tempered the harshest effects of subrogation by allowing the injured worker to keep a minimum of one-third of the net tort recovery, even if the subrogation interest is not fully satisfied.

¶14 Irrespective of what may be good policy, we can locate no constitutional principle requiring the legislature to reserve any part of the suit proceeds for an injured worker before subrogation applies. If the Legislature is not constitutionally required to reserve any part of the tort recovery for the injured worker, it cannot act unconstitutionally against the interest of that worker by improving the claimant's position beyond that constitutionally required. We find no authority for Jones's position, and find no constitutional infirmity in § 43 on this question.

¶15 Jones next argues that § 43 is constitutionally infirm because fees and costs are first deducted from the gross tort recovery, and hence § 43 does not require insurers to contribute to the cost of the tort suit in order to recover its subrogation interest.[4] Jones argues that this amounts to an arbitrary taking of his property or denial of equal protection or due process by allowing insurers to benefit from a suit it did not finance.

¶16 It is clear, however, that Jones was treated equally compared to a tort plaintiff who did not receive workers' compensation because he receives the same total recovery, after fees and expenses, whether workers' compensation is involved or not. If there had been no workers' compensation coverage, Jones would still have received $160,000 from the tortfeasor. Assuming for the purposes of argument that his fees and costs consumed 40 percent of this recovery, Jones would have received $96,000 in net proceeds. As it is, Jones received $44,254 in payments and services from the insurers and would receive $51,746 from his tort suit after fees, costs and subrogation. These two amounts of compensation together add up to $96,000. Jones therefore receives the same $96,000 in medical services and compensation, irrespective of whether the injury was covered by workers' compensation. It is therefore difficult to see what property right has been "taken" from Jones except the profits of a double recovery, or the possibility of negotiating down the cost of medical services to below that paid by the insurer.

¶17 Jones must therefore argue that he is constitutionally entitled to greater total compensation than he could recover in a tort suit alone, simply because his injuries were also covered by workers' compensation insurance. We find no constitutional principle that requires such a double recovery.

¶18 Further, if Jones argues that he is unequally treated compared to the workers' compensation carrier, as opposed to other tort claimants, we note that a carrier who chooses to sue a third-party tortfeasor to recover its workers' compensation payments is subject to the same treatment as the employee. Pursuant to 85 O.S. § 43(B)(1)-(2) the employer or carrier that sues to recoup its payments is required to give up any excess recovery to the injured employee, regardless of the fact the injured employee did not contribute to the cost of the tort suit to recover this sum. The rule is simple and fair: the party that brings suit pays the fees.

¶19 Finally, Jones argues that the automatic lien is an invalid special law. In Glasco v. State ex rel. Oklahoma Department of Corrections, 2008 OK 65, ¶ 21, 188 P.3d 177, 184, the Court described the required analysis for purposes of Okla. Const. art. 5, § 46 as follows:

Generally, a special law singles out particular persons or things upon which it operates, while a general law embraces and operates upon all or all within a class. Where a statute operates upon a class, the classification must be reasonable and pertain to some peculiarity in the subject of the legislation and there must be some distinctive characteristic upon which different treatment is reasonably founded.

¶20 Jones poses a hypothetical regarding two similarly situated claimants who receive identical benefits but disparate treatment. What principle the hypothetical is intended to demonstrate is not entirely clear, however. To quote:

If [a] fellow worker receives the same statutory workers' compensation benefits as [claimant] but settles his third-party claim for $50,000, the statute results in [insurer] paying part of the attorneys fee and expenses incurred in the third-party action. However, because attorneys for [claimant] accomplished a favorable result in his third-party case, the automatic application of [85 O.S. § 43] allows the [insurer] to receive a windfall and recover every dime paid in workers compensation benefits to claimant. The [insurer] should not reap unjust enrichment because of disparate treatment for members of the same class.

¶21 Jones appears to bring two arguments here. The first is that § 43 provides the insurer a "first lien on two-thirds (2/3) of the net proceeds recovered in the action that remain after the payment of the reasonable costs of collection." Jones apparently argues that, if two-thirds of the recovery after fees and costs is insufficient to meet the subrogation interest, the insurer does not fully recover its payments and has therefore, in fact, paid "part of the attorney's fee and expenses incurred in the third party action." However, if two-thirds of the recovery after fees and costs is sufficient to meet the subrogation interest the insurer recovers fully and has not paid "part of the attorney's fee and expenses." Jones appears to argue that this creates disparate treatment among similarly situated claimants, because the insurer pays "part of the attorney's fee and expenses" in one scenario, but not the other.

¶22 The fallacy here is that, if two-thirds of the recovery after fees is less than the subrogation amount, the insurer has somehow "paid part of the fees." Section 43 is entirely clear that, under no circumstances, does the insurer pay fees if a claimant wins a tort suit. Fees are deducted before the insurer has any right to a recovery. There is no disparate treatment on this basis.

¶23 The second argument is merely a repetition of Jones' prior arguments that allowing any subrogation of worker's compensation payments is unconstitutional but does not appear to make any case of disparate treatment. In sum, we find no merit in Jones's constitutional challenges to § 43.

The Medical Case Manager

¶24 Jones next argues that, if subrogation here is constitutional, the amount claimed is excessive because it includes charges for the services of a "nurse case manager." Jones argues that such a case manager benefits only the insurer, not the injured worker, and hence the costs incurred for a case manager are not a "benefit paid" to the employee, and therefore not subject to subrogation.

¶25 Jones argues that this question is settled by 85A O.S. §113, which states:

For cases not covered by a certified workplace medical plan, and where the employer, insurance company, or own-risk employer do not provide case management, case management may be granted by the Workers' Compensation Commission on the request of any party, or when the Commission determines that case management is appropriate....

The reasonable and customary charges of a medical case manager appointed by the Commission shall be borne by the employer or insurance carrier.

¶26 Jones argues that the last sentence of § 113, stating that the customary charges of a medical case manager appointed by the Commission shall be borne by the employer or insurance carrier constitutes a statutory determination that these costs are not "compensation" to the employee. The immediate problem with this interpretation is that costs such as medical care and lost wages are also "borne by the employer or insurance carrier" until such time as the injured worker receives a tort recovery for the same injuries and losses. Although § 113 states that the costs of a case manager are initially to be paid by the carrier, it does not state that such costs cannot be recovered by subrogation.

¶27 Jones next argues that § 43 provides a subrogation right only against "amounts paid and to be paid by [carrier] as compensation to the injured employee," and that 85A O.S. § 2(10) defines "compensation" as "the money allowance payable to the employee or to his or her dependents and includes the medical services and supplies provided for in Section 50 of this title and funeral expenses." Section 50, in turn, provides that "[t]he employer shall promptly provide an injured employee with medical, surgical, hospital, optometric, podiatric, chiropractic and nursing services, reasonably necessary in connection with the injury received by the employee ...." Jones argues that a medical case manager provides none of these services and hence the case manager's services are not part of the "compensation" that is subject to subrogation.

¶28 If it was clear as a matter of fact that a "medical case manager" does not assist in the provision of medical services, Jones' point would be well-taken. In this case, however, we have no evidence whatsoever as to the functions the medical case manager performed. Jones did not mention these functions at all in his briefing to this Court. In the district court, he stated that a medical case manager "facilitates communication between medical service providers and the adjuster" and is "chosen by the claims handler to make his job easier." He cited no testimony or other evidence to this effect, however.

¶29 Further, the relevant statutes indicate a different role. The functions described by Jones could clearly be filled by general administrative personnel. Title 85A O.S. § 2(4), however defines a case manager as:

[A] person who is a registered nurse with a current, active unencumbered license from the Oklahoma Board of Nursing, or possesses one or more of the following certifications which indicate the individual has a minimum number of years of case management experience, has passed a national competency test and regularly obtains continuing education hours to maintain certification:

a. Certified Disability Management Specialist (CDMS),

b. Certified Case Manager (CCM),

c. Certified Rehabilitation Registered Nurse (CRRN),

d. Case Manager - Certified (CMC),

e. Certified Occupational Health Nurse (COHN), or

f. Certified Occupational Health Nurse Specialist (COHN-S) ....

¶30 This definition requires very specific and strictly medical qualifications, and implies that a medical case manager has a medical role in managing a patient's treatment, rather than simply performing administrative functions to assist a claims manager. Further, § 113 provides that case management may be granted on the request of any party, or when the Commission determines that case management is appropriate. If case management has no role in treatment, but is an internal administrative function that simply "makes the adjuster's job easier," it is difficult to see why the Commission has the power to appoint a manager in the first instance, or why an injured employee should be able to request one. The statutes provide at least an implication that a medical case manager has a role in medical treatment, and Jones provided no evidence to the contrary. As such we reject his claim of error here.

CONCLUSION

¶31 We find no constitutional infirmity of the type alleged by Jones as to 85A O.S. § 43. Nor do we find any evidence supporting his claim that a medical case manager has a purely administrative role and does not have a part in providing medical benefits as part of a workers' compensation claim. As such, we affirm the decisions of the district court.

¶32 AFFIRMED.

WISEMAN, P.J., and BARNES, J. (sitting by designation), concur.

FOOTNOTES

[1] The initial pleadings reference a claim of $45,254. At some point this was changed to $44,254. There appears to be no dispute that the latter number is the actual claim for subrogation.

[2] Article II, section 6, of the Oklahoma Constitution provides: "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

[3] We note that Jones argues that § 43 creates an "automatic" lien on his tort recovery, and the insurers appear to agree. However, the lien creation does not appear to be automatic, however. Pursuant to § 43(A)(1)(c), the lien is created by a carrier "join[ing] in the action against a third party" after mandatory "notice" of the suit is given. No published decision has interpreted what constitutes either "notice" or "joining in the action" per § 43. Nor has any decision determined if a lien automatically arises if the mandatory "notice" of the suit is not given.

Here, the first "notice" we find is the mailing of Jones's "Motion for Determination of Subrogation Interest" to the insurers, which occurred after the settlement was complete. The insurers then moved to intervene. Both parties and the court found this sufficient to create a lien. For the purpose of this opinion we will assume that a lien was properly established.

[4] Given that AGC Comp did not apparently receive notice of the suit until after it had settled, how it was supposed to participate and share costs up until that the time is not explained.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1998 OK 10, 954 P.2d 1219, 69 OBJ 452, 
NELSON v. NELSON
Discussed

 
2003 OK 12, 67 P.3d 333, 
HUMPHRIES v. LEWIS
Discussed

 
2005 OK 1, 107 P.3d 560, 
BARNES v. BARNES
Discussed

 
2006 OK 34, 148 P.3d 842, 
JACOBS RANCH, L.L.C. v. SMITH
Discussed

 
2008 OK 65, 188 P.3d 177, 
GLASCO v. STATE ex rel. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed

 
2008 OK 95, 196 P.3d 511, 
EOG RESOURCES MARKETING v. OKLAHOMA STATE BD. OF EQUALIZATION
Discussed

 
2010 OK 48, 237 P.3d 181, 
LAFALIER v. THE LEAD-IMPACTED COMMUNITIES RELOCATION ASSISTANCE TRUST
Discussed

 
2016 OK 20, 373 P.3d 1057, 
TORRES v. SEABOARD FOODS, LLC
Discussed at Length

 
2017 OK 13, 391 P.3d 111, 
BROWN v. CLAIMS MANAGEMENT RESOURCES INC.
Discussed

 
2017 OK 78, 404 P.3d 44, 
GIBBY v. HOBBY LOBBY STORES INC.
Discussed

Title 85. Workers' Compensation

 
Cite
Name
Level

 
85 O.S. 43, 
Repealed
Discussed

Title 85A. Workers' Compensation

 
Cite
Name
Level

 
85A O.S. 2, 
Definitions
Discussed

 
85A O.S. 43, 
Compensation Insurance - Liability - Subrogation
Discussed at Length

 
85A O.S. 57, 
Employee Absence from Scheduled Treatment Appointment - Limit on Benefits - Exceptions
Cited

 
85A O.S. 113, 
Case Management Request
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA